DENGLER v STATE FARM MUTUAL INSURANCE COMPANY

Docket No. 70375. Submitted April 4, 1984, at Detroit.—Decided May 18, 1984. Leave to appeal applied for.

> Scarlett L. Dengler, individually and as guardian of Ralph E. Dengler, brought an action in Wayne Circuit Court against State Farm Mutual Insurance Company, insurer of the Dengler automobile under a no-fault insurance policy, seeking medical expenses arising out of the treatment and care of Ralph Dengler after he suffered a subarachnoid hemorrhage which left him totally disabled. Plaintiff alleged that the subarachnoid hemorrhage was caused or contributed to by a hydrocephalic condition, which in turn had been caused by an injury incurred in the automobile accident in which Ralph Dengler had been involved. At the jury trial of the action, one of plaintiff's expert witnesses declined to express an opinion as to any causal relationship between the automobile accident and the subarachnoid hemorrhage, while the other expert witness acknowledged that his testimony on any causal relationship would be pure speculation, that there was only a remote possibility that hydrocephalus pre-existed the hemorrhage and that there was a much better possibility that the hemorrhage was work-related rather than as a result of hydrocephalus. At the close of plaintiff's proofs, defendant moved for a directed verdict of no cause of action. The trial court, Thomas J. Brennan, J., granted the motion for a directed verdict. Following the denial of her motion for new trial, plaintiff appealed. *Held:*
>
> 1. Even viewing the evidence in the light most favorable to

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.

[2] 75 Am Jur 2d, Trial §§ 483-485.

[3] 5 Am Jur 2d, Appeal and Error § 884.

31 Am Jur 2d, Expert and Opinion Evidence §§ 3, 7, 16.

[4] 7 Am Jur 2d, Automobile Insurance §§ 357, 359.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

Validity and construction of no-fault automobile insurance plans. 42 ALR3d 229.

plaintiff, the proofs fail to establish the necessary causal relationship between the automobile accident and the subarachnoid hemorrhage suffered by Ralph Dengler. Accordingly, the motion for a directed verdict was properly granted.

2. The trial court properly considered all the testimony of plaintiff's witnesses, including the testimony elicited by defense counsel on cross-examination, in making its determination on the motion for a directed verdict.

3. The trial court properly excluded the testimony of one of plaintiff's expert witnesses relative to matters necessarily requiring expertise in neurology, since the witness, while a qualified expert in internal medicine, was, by his own admission, not qualified to testify as an expert in the field of neurology.

4. The trial court properly excluded evidence of the cost of treatment had treatment been in a private hospital rather than at the veteran's hospital at which Ralph Dengler was treated since, under the no-fault automobile insurance act, plaintiff had no right to recover the difference between the cost of services in a private hospital and the cost of those same services in the veteran's hospital.

Affirmed.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's granting of a motion for a directed verdict, must determine, viewing the evidence in the light most favorable to the nonmoving party, whether reasonable persons could honestly have reached different conclusions as to whether the nonmoving party had established a prima facie case.

2. MOTIONS AND ORDERS — DIRECTED VERDICT — EVIDENCE.

A court in deciding a motion for a directed verdict may consider the testimony elicited during the cross-examination of the nonmoving party's witnesses; the fact that the evidence must be viewed in the light most favorable to the nonmoving party does not mean that damaging evidence must be ignored.

3. WITNESSES — EXPERT WITNESSES — EVIDENCE — JUDICIAL DISCRETION — APPEAL.

The decision to allow or exclude the introduction of expert opinion evidence is a question addressed to the discretion of the trial court; the trial court's decision on that matter will not be reversed on appeal absent an abuse of discretion.

4. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — REDUCTION
   OF BENEFITS — VETERANS BENEFITS.

  The Legislature clearly intended that the provision of the no-fault
  insurance act which reduces the benefits payable pursuant to
  that act to the extent of government benefits received because
  of an automobile accident should apply to Army and Veterans'
  Administration benefits received as a result of the automobile
  accident giving rise to the no-fault insurance claim (MCL
  500.3109[1]; MSA 24.13109[1]).

*Alan L. Kaufman,* for plaintiff.

*William D. Eggenberger,* for defendant.

Before: J. H. GILLIS, P.J., and T. M. BURNS and
N. J. KAUFMAN,* JJ.

PER CURIAM. Plaintiff appeals as of right from a
directed verdict granted in favor of defendant after
a jury trial.

On February 5, 1978, Ralph Dengler was in-
volved in an automobile accident which, according
to the police report, caused considerable damage to
his vehicle but no injuries to him. One year later,
Mr. Dengler visited his family physician complain-
ing of headaches, which he blamed on the automo-
bile accident the year before. The family physician
was unable to relieve Mr. Dengler's headaches and
referred him to a neurologist. The neurologist
concluded that the headaches were unrelated to
the accident and recommended that a CAT scan be
performed. However, before the CAT scan could be
performed, Ralph Dengler suffered a subarachnoid
hemorrhage, as a result of which he is totally
disabled.

Ralph Dengler's wife, Scarlett, acting individu-
ally and as guardian of Ralph Dengler, brought
this action against defendant as insurer of their

* Former Court of Appeals Judge, sitting on the Court of Appeals
by assignment.

automobile under a standard no-fault automobile policy which provided that defendant would pay all reasonable medical expenses related to any injuries sustained as a result of operation of the automobile.

In reviewing the granting of a motion for directed verdict, this Court must determine, viewing the evidence in the light most favorable to the plaintiff, whether reasonable persons could honestly reach different conclusions as to whether the plaintiff had established a prima facie case. *Ransford v Detroit Edison Co,* 124 Mich App 537, 542; 335 NW2d 211 (1983).

Plaintiff's theory was that the automobile accident of February 5, 1978, had caused Ralph Dengler to suffer from hydrocephalus, which in turn caused or contributed to the subarachnoid hemorrhage which disabled Mr. Dengler. However, there was no evidence in the record supporting the crucial links in this chain, those being that the accident caused hydrocephalus, that Mr. Dengler had hydrocephalus, or that the hydrocephalus existed prior to the subarachnoid hemorrhage. One of plaintiff's experts declined to express an opinion as to any causal relationship between the automobile accident and the subarachnoid hemorrhage. The other expert admitted that his testimony on this point would be pure speculation, and even with that qualification testified that there was only a "remote possibility" that the hydrocephalus preexisted the hemorrhage. This expert opined that there was a "much better possibility" that Mr. Dengler's subarachnoid hemorrhage was caused by work-related pressures than by hydrocephalus. The proofs, even taken in a light most favorable to the plaintiff, would not enable reasonable minds to conclude that Mr. Dengler had become hydroce-

phalic as a result of the automobile accident and that the hydrocephalic condition had caused the subarachnoid hemorrhage which resulted in his present disabilities. Plaintiff's failure to establish this vital causal relationship was fatal to her prima facie case.

Plaintiff's complaint that the trial court, in deciding the motion for a directed verdict, improperly considered the testimony elicited during defense counsel's cross-examination of the plaintiff's witnesses is without foundation. The fact that the evidence must be viewed in a light most favorable to the plaintiff does not mean that damaging evidence must be ignored. The trial court properly granted the defendant's motion for directed verdict.

Plaintiff also objects to the trial court's decision to exclude the testimony of Dr. Charles Beauchamp, whom the trial court found to be qualified as an expert in internal medicine but not neurology. Plaintiff attempted to qualify the doctor as an expert in differential diagnosis, which is simply a method by which all possible causes of a condition are listed and then the various causes are ruled out so as to leave the most likely cause or causes of a particular patient's problem. However, even if Dr. Beauchamp were able to testify as to the three most likely causes of a subarachnoid hemorrhage, it still would have required an expert in neurology to take the next step and rule out all but hydrocephalus. By his own admission, Dr. Beauchamp was unqualified to testify as an expert witness in this area. The decision to allow or exclude the introduction of expert opinion evidence is left to the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *Slocum v Ford Motor Co,* 111 Mich App 127; 314 NW2d 546

(1981), *lv den* 414 Mich 886 (1982). We find no abuse of discretion.

In her final argument, plaintiff contends that defendant's refusal to pay duplicating benefits forced Mr. Dengler to go to the veteran's hospital for treatment and that, therefore, plaintiff is entitled to receive from defendant the difference between the cost of the services Mr. Dengler received at the veteran's hospital and the cost of those services had Mr. Dengler received those services in a private hospital. This argument is wholly without merit.

Contrary to plaintiff's assertion, defendant refused to stipulate that the insurance policy in question provided for duplicating benefits. Moreover, the set-off provision of the no-fault act would preclude plaintiff's recovery of these costs even if the policy did provide for duplicating benefits. That provision states:

"Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." MCL 500.3109(1); MSA 24.13109(1).

This Court already ruled in *Bagley v State Farm Mutual Automobile Ins Co,* 101 Mich App 733; 300 NW2d 322 (1980), that this set-off provision applies to medical benefits received from the Veteran's Administration. Plaintiff has failed to distinguish her case from *Bagley, supra,* and the reasoning in *Bagley* is consistent with the Legislature's intent to reduce or contain the cost of basic insurance. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 544; 273 NW2d 829 (1979), *app dis* 444 US 803 (1979). Thus, the trial court cor-

rectly excluded evidence which would have estab-
lished what Mr. Dengler's treatment would have
cost in a private hospital.
  Affirmed.