CROWLEY v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 77380. Argued January 13, 1987 (Calendar No. 6). Decided
June 22, 1987.

Chad Crowley brought an action in the Wayne Circuit Court
against the Detroit Automobile Inter-Insurance Exchange, seek-
ing no-fault personal protection benefits for injuries suffered as
a result of an accident while a passenger in an automobile. At
the time of the accident, the plaintiff was on active duty with
the United States Navy. DAIIE was the insurer of the driver of
the automobile. The court, Paul S. Teranes, J., ruled that the
DAIIE, the no-fault insurer of the automobile, was liable for
payment of reasonable charges incurred in providing the plain-
tiff's medical care without deduction of the value of medical
care provided by the United States government. The Court of
Appeals, V. J. BRENNAN, P.J., and D. E. HOLBROOK, JR., and
SIMON JJ., reversed in an opinion per curiam, holding that
military medical benefits are benefits provided by the federal
government within the meaning of § 3109(1) of the no-fault act
(Docket No. 79749). The plaintiff appeals.

In an opinion by Justice LEVIN, joined by Chief Justice RILEY
and Justices BRICKLEY, BOYLE, and GRIFFIN, the Supreme Court
held:

Amounts paid by the United States government for medical
care furnished to a member of the armed forces are benefits
required to be provided under the laws of the federal govern-
ment which, under the no-fault act, are required to be sub-
tracted from medical no-fault benefits otherwise payable where
neither the injured person, a spouse, nor a relative domiciled in
the same household owns an automobile insured under the no-
fault act.

1. Benefits provided or required to be provided under the

REFERENCES

Am Jur 2d, Automobile Insurance §§ 359, 368.

Combining or "stacking" of "no fault" or personal injury protection
(PIP) coverages in automobile liability policy or policies. 29
ALR4th 12.

Validity and construction of no-fault insurance plans providing for
reduction of benefits otherwise payable by amounts receivable
from independent collateral sources. 10 ALR4th 996.

laws of any state or the federal government are to be subtracted from personal protection benefits otherwise payable for the same injury. Medical benefits provided by the federal government to a member of the armed forces pursuant to 10 USC 1071 *et seq.*, in respect to injuries suffered in an automobile accident in Michigan serve the same purpose as no-fault medical benefits where provided as a result of the same accident. Thus, the amounts paid by the federal government for these medical benefits should be subtracted from no-fault medical benefits. Subtraction of the military medical benefits does not deprive the recipient of equal protection. There is a reasonable relationship between the classification of the benefits and the objective of providing benefits at a reasonable cost to those not covered by such a program.

2. There is no need to decide in this case whether military medical benefits are "other health and accident coverage" within the meaning of § 3109a of the no-fault act, because that section applies only to benefits payable to the person named in a no-fault policy, a spouse, or any relative of either domiciled in the same household. The plaintiff in this case did not own an automobile, was single, and was not domiciled in the household of a person who had elected not to coördinate benefits. Even if the military medical health benefits were found to be "other health and accident coverage" within the meaning of § 3109a, the plaintiff is not within the intendment of the statute, and the military medical benefits paid to him are required to be subtracted from his no-fault medical benefits under § 3109(1).

Affirmed.

Justice ARCHER, joined by Justice CAVANAGH, stated that benefits paid under the plaintiff's military health plan are other health and accident benefits within the meaning of § 3109a of the no-fault act, and payments by the United States Navy and the Veterans Administration should not be set off from amounts payable under the defendant's no-fault policy.

In determining whether particular payments under a government program are the type of benefits required to be deducted from no-fault benefits, consideration should be given to whether the government benefits serve the same purpose as the no-fault benefits and are provided or required to be provided as a result of the same accident. The health care benefits provided by the United States Navy and the Veterans Administration in this case are within the scope of § 3109a. The coverage, while sometimes overlapping no-fault benefits, does not serve the same purpose. The military benefits are benefits of employment, covering all members of the defendant's family for

preventative, diagnostic, and therapeutic care, while no-fault coverage serves only to provide benefits for a specific injury resulting from a specific accident. Coverage under the military plan is triggered by employment, while no-fault benefits are triggered by an automobile accident. There is no reason to distinguish the military plan from other forms of health and accident coverage which would provide recipients with duplicative coverage. In addition, no coördination of benefits is required. Coördination is optional under the act for a reduced premium and, if elected by an insured, would apply only to the insured, a spouse, and members of the household, not to other passengers. In this case, the insured's policy was not coördinated. The plaintiff did not own a car and did not have a no-fault policy to coördinate with his military health care benefits. The plaintiff should be entitled to full personal injury protection benefits under the insured's policy.

144 Mich App 394; 375 NW2d 754 (1985) affirmed.

INSURANCE — NO-FAULT — MILITARY MEDICAL BENEFITS.

Amounts paid by the United States government for medical care furnished to a member of the armed forces are benefits required to be provided under the laws of the federal government which, under the no-fault act, are required to be subtracted from medical no-fault benefits otherwise payable where neither the injured person, a spouse, nor a relative domiciled in the same household owns an automobile insured under the no-fault act (MCL 500.3109[1]; MSA 24.13109[1]).

*Goodman, Eden, Millender & Bedrosian* (by *James A. Tuck* and *Joan Lovell*) for the plaintiff.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *A. Randolph Judd*); (*Gromek, Bendure & Thomas*, by *John A. Lydick*, of counsel) for the defendant.

LEVIN, J. The question presented is whether medical care provided a member of the armed forces pursuant to 10 USC 1071 *et seq.* is a benefit provided under the laws of the federal government required to be subtracted from medical no-fault benefits otherwise payable where neither the injured person, his spouse, nor a relative domiciled

in the same household owns an automobile insured under the no-fault act. We hold that amounts paid by the United States government for medical care furnished a member of the armed forces are benefits required to be provided under the laws of the federal government required to be subtracted from medical no-fault benefits otherwise payable where neither the injured person, his spouse, nor a relative domiciled in the same household owns an automobile insured under the no-fault act, and affirm the decision of the Court of Appeals.

I

Chad Crowley, while in the service of the United States Navy, was seriously injured when an automobile, in which Crowley was riding as a passenger and which was owned and operated by Richard Belloni, struck a tree in Detroit. Medical care was provided and paid by the United States government pursuant to 10 USC 1071 *et seq.*

The circuit court ruled that the defendant, Detroit Automobile Inter-Insurance Exchange, the no-fault insurer of Belloni's automobile, was obligated to pay the reasonable charges[1] incurred for providing Crowley's medical care in the amount of $145,149.50, plus accrued interest without deduction for the value of the medical care provided by the United States government.

The Court of Appeals held, relying on earlier decisions of that Court,[2] that military medical benefits are benefits provided by the federal government within the meaning of § 3109(1)[3] of the

[1] MCL 500.3107; MSA 24.13107.

[2] *Bagley v State Farm Mutual Automobile Ins Co*, 101 Mich App 733; 300 NW2d 322 (1980); *Dengler v State Farm Mutual Automobile Ins Co*, 135 Mich App 645, 650; 354 NW2d 294 (1984).

[3] MCL 500.3109(1); MSA 24.13109(1).

no-fault act.[4] The Court reviewed this Court's decision in *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), where this Court held that benefits paid under the Medicare program are "other health and accident coverage" within the meaning of § 3109a of the no-fault act (requiring a no-fault insurer to offer coördinated health care benefits at reduced premiums), and that where a no-fault policy is issued to the injured person without coördinated benefits he may recover for the reasonable charges incurred for his medical care without reduction pursuant to § 3109(1) for Medicare benefits paid in respect to the automobile accident that gave rise to the claim for no-fault medical benefits.

The Court of Appeals said that it had concluded it should not extend *LeBlanc* to military medical benefits because this Court in *LeBlanc* had specifically limited its holding to Medicare and had stated that this Court would not "express an opinion with regard to the inclusion of other possible forms of health and accident coverage within the purview of § 3109a."[5] The Court of Appeals added that it found the Medicare and military medical care programs distinguishable, and concluded that the circuit court had erred "in awarding duplicate benefits,"[6] stating that the test for determining whether the benefits were within § 3109(1) was stated by this Court in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984), that "military benefits serve the same purpose as no-fault benefits," and that "[b]oth benefits would be for plain-

---

[4] *Crowley v DAIIE,* 144 Mich App 394, 396; 375 NW2d 754 (1985).

[5] *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 207; 301 NW2d 775 (1981).

[6] *Crowley, supra,* p 398.

tiff's medical care from the same injury for the exact same procedures, tests, care and doctors."[7]

II

Section 3109(1) of the no-fault act provides:

Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

This Court has held that workers' compensation benefits,[8] social security survivors' benefits,[9] and social security disability benefits[10] are required to be subtracted from no-fault benefits otherwise payable because they were benefits provided or required to be provided under the laws of this state or the federal government. In *Jarosz,* this Court held that social security retirement (old age) benefits were not required to be subtracted pursuant to § 3109(1) because they do not serve the same purpose as no-fault work loss benefits and are not provided or required to be provided as a result of injuries received in a motor vehicle accident giving rise to a claim for work loss benefits. In so holding, this Court said:

We conclude that the correct test is: state or federal benefits "provided or required to be provided" must be deducted from no-fault benefits under § 3109(1) if they:

[7] *Id.*

[8] *Mathis v Interstate Motor Freight System,* 408 Mich 164, 187; 289 NW2d 708 (1980).

[9] *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 546; 273 NW2d 829 (1979), app dis 444 US 803 (1979).

[10] *Thompson v DAIIE,* 418 Mich 610; 344 NW2d 764 (1984).

1) Serve the same purpose as the no-fault bene-
fits, and

2) Are provided or are required to be provided as
a result of the same accident. [*Jarosz, supra,* p
577.]

We agree with the Court of Appeals that medi-
cal benefits provided by the United States govern-
ment to a member of the armed forces pursuant to
10 USC 1071 *et seq.* in respect to injuries suffered
in an automobile accident in Michigan serve the
same purpose as no-fault medical benefits, and
that such benefits are provided as a result of the
same accident.

Crowley asserts that military medical coverage
does not serve the same purpose as no-fault bene-
fits because military medical coverage is not lim-
ited to automobile accidents, includes family mem-
bers of a member of the armed forces, is provided
as a fringe benefit contingent upon the employ-
ment relationship, and is designed to improve
employee morale. Recognizing these possible dis-
tinctions, we are persuaded that a purpose of both
the military medical care program and of no-fault
medical benefits is to provide for the medical care
of a member of the armed forces, as well, indeed,
as of other persons, who might be injured in an
automobile accident that occurs in this state, and
for that reason both programs "[s]erve the same
purpose." Similarly, while Crowley would have
been entitled to military medical care benefits
without regard to whether his injury was the
result of an automobile accident in this state, the
military medical benefits provided to him were in
fact required to be provided "as a result of the
same accident" that gave rise to his claim for no-
fault medical benefits.

Nor do we find merit in Crowley's claim that the

Equal Protection Clauses of the state and federal constitutions are violated by the classification providing for the subtraction of military medical benefits from no-fault medical benefits otherwise payable. There is a reasonable relationship between the classification, requiring the subtraction of benefits otherwise required to be provided by state or federal law, and the objective of providing benefits at a reasonable cost to those who are not otherwise provided for by such state or federal programs. In providing medical benefits under the no-fault act only to those who do not otherwise have mandatory medical benefits under some other state or federal program, the Legislature does not deprive those who already have benefits under another state or federal program of equal protection. It provides rather the protection of governmentally mandated medical benefits to those not already covered in that regard by a mandatory state or federal program.

### III

Crowley claims that military medical benefits are "other health and accident coverage" within the meaning of § 3109a of the no-fault act, and relies on the following statement in *LeBlanc* as indicating that this Court's holding in that case—despite its statement that it expresses no opinion regarding the inclusion of other possible forms of health and accident coverage within the purview of § 3109a—was not limited to Medicare and included all governmental health and accident coverage "from whatever source":

> The legislative history of § 3109a suggests that the Legislature, in leaving the phrase "other health and accident coverage" unmodified by the word private, intended to give unrestrained appli-

cation of § 3109a to health and accident coverage from whatever source. [*LeBlanc, supra,* p 202.]

Section 3109a provides:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

Section 3109a was not enacted as part of the original no-fault act in 1972,[11] and was added in 1974.[12] Thus, as originally enacted, military medical benefits would have been required, for the reasons stated in part II, to be subtracted pursuant to § 3109(1). The question then is whether the amendment of the act that added § 3109a requires a different result.

We have concluded that there is no need to decide in the instant case whether military medical benefits are "other health and accident coverage" within the meaning of § 3109a because § 3109a applies only to benefits payable to the person named in a no-fault policy, his spouse, and any relative of either domiciled in the same household.

In *LeBlanc,* a no-fault policy had been issued by State Farm Mutual Automobile Insurance Company to Joseph LeBlanc, who had not elected to coördinate his no-fault insurance coverage with his

[11] 1972 PA 294.
[12] 1974 PA 72.

Medicare coverage. In holding that LeBlanc could recover no-fault medical benefits in addition to Medicare paid in respect to injuries suffered in the accident that gave rise to the claim for no-fault medical benefits, this Court said:

> Section 3109a permits a set-off of "other health and accident coverage" at the insured's option. This provision, like § 3109(1), serves to eliminate duplicative recovery and to contain or reduce insurance costs; additionally, it allows individuals to tailor their insurance coverage to their own special needs. Cost reduction is implemented under § 3109a on an individual basis rather than in blanket fashion. [*LeBlanc, supra,* p 197.]

The foregoing rationale and § 3109a, by its terms, apply only in a situation where there is an insurer providing personal protection insurance benefits, who then must offer, at appropriately reduced premium rates, deductions and exclusions reasonably related to other health and accident coverage on the insured.

Where the insured accepts the offer and coördinates benefits, the coördination applies only to the insured, his spouse, and any relative of either domiciled in the same household. Although an insured's decision to coördinate medical benefits affects only his own rights and those of his spouse or any relative of either domiciled in the same household claiming benefits pursuant to priority § 3114(1),[13] and not the entitlement of persons claiming no-fault benefits under other subsections of § 3114[14] or priority § 3115,[15] § 3109a does not enlarge the entitlement of a person in respect to whom an insurer is not required to "offer, at

---

[13] MCL 500.3114(1); MSA 24.13114(1).
[14] MCL 500.3114; MSA 24.13114.
[15] MCL 500.3115; MSA 24.13115.

appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured." It was beyond the purpose of the Legislature, in adding § 3109a, to reduce the operative effect of § 3109(1) respecting a person who does not own an automobile and who cannot claim no-fault benefits under the no-fault policy of a spouse or relative with whom he is domiciled in the same household who elected not to coördinate.[16]

To be sure, the second clause of the second sentence of § 3109a, stating that the deductions and exclusions "shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household," is designed to preclude a reduction of the benefits otherwise payable to a person entitled to benefits under § 3114 or § 3115, other than the insured, his spouse, and any relative of either domiciled in the same household. That language, however, does not mean that a person to whom benefits are payable under § 3114 (other than § 3114[1]) or § 3115, is entitled to the benefit of any modification of § 3109(1) resulting from the enactment of § 3109a without regard to whether he, his spouse, or any relative of either domiciled in the same household is a person to whom an insured must offer, at appropriately reduced rates, deductions and exclusions reasonably related to other health and accident coverage on the insured.

Since Crowley is not a person in respect to whom a no-fault insurer was required to make such an offer—he did not own an automobile, he was single, and he was not domiciled in the house-

_____
[16] The parties stipulated that Chad Crowley did not reside with his parents on the date of the accident and had no intention to reside in their home in the future.

hold of a person to whom such an offer was re-
quired to be made—we conclude that even if mili-
tary medical benefits "are other health and acci-
dent coverage" within the meaning of § 3109a, he
is not within the intendment of § 3109a, and the
military medical benefits paid to him are required
to be subtracted under § 3109(1).

We affirm the decision of the Court of Appeals.

RILEY, C.J., and BRICKLEY, BOYLE, and GRIFFIN,
JJ., concurred with LEVIN, J.

ARCHER, J. (*dissenting*). The issue in this case is
whether a provision of Michigan's no-fault act,
which authorizes a deduction of governmental ben-
efits from no-fault benefits, permits an insurer to
deduct the government's payment of a service-
man's medical care from amounts payable under
the applicable no-fault policy. We would hold that
the plaintiff's military health plan constitutes
"other health and accident coverage" within the
meaning of § 3109a. Therefore, payments from the
United States Navy and the Veterans Administra-
tion should not be set off from amounts payable
under the applicable no-fault policy. We would
reverse the decision of the Court of Appeals.

In view of our holding on the principal question,
we would not reach the constitutional issue of
equal protection raised in this case.

I

The parties stipulated to the facts. Plaintiff,
Chad Crowley, age 22, was a passenger in a car
driven by Richard Belloni when the car left the
road and struck a tree. Although he was on active
duty in the United States Navy, Mr. Crowley was
off duty when the accident occurred on May 10,

1980. As a result of injuries received in the accident, Mr. Crowley was rendered a paraplegic with no use of his legs. He was subsequently medically retired by the military. Because he was a member of the armed forces, the Navy and the Veterans Administration paid Mr. Crowley's medical expenses. In addition, the plaintiff had $3,638.70 in medical expenses that were not paid by the government.

Although he had medical coverage, Mr. Crowley did not have a no-fault automobile insurance policy since he did not own a car. However, Richard Belloni, the driver of the automobile in which plaintiff was a passenger, was insured under a no-fault automobile policy issued by defendant Detroit Automobile Inter-Insurance Exchange pursuant to the Michigan no-fault insurance act, 1972 PA 294.

Mr. Crowley filed a claim with the Detroit Automobile Inter-Insurance Exchange[1] for personal protection benefits under Mr. Belloni's no-fault insurance policy. DAIIE has refused and continues to refuse payment. Mr. Crowley filed suit on April 28, 1981.

At a bench trial in Wayne Circuit Court on April 30, 1984, the parties provided the court with a stipulated statement of facts and stipulated exhibits. The issues before the court were: (1) which of two insurance carriers was liable for payment of benefits,[2] and (2) which setoff provision of the no-fault act applied.

Regarding the setoff, the trial court had to determine whether the plaintiff's military health plan

---

[1] The insurance company's name has since changed to the Auto Club Insurance Association.

[2] DAIIE initially denied liability, arguing that the applicable carrier was Western Casualty and Surety Company which insured the automobiles owned by Crowley's father. The trial court held that DAIIE was the applicable carrier, and the finding has not been appealed.

constituted "other health and accident coverage" as provided in MCL 500.3109a; MSA 24.13109(1), which was subject to a voluntary setoff, or did the plan constitute "[b]enefits . . . provided under the laws of . . . the federal government," MCL 500.3109(1); MSA 24.13109(1), which requires a mandatory subtraction of government benefits from no-fault benefits otherwise payable.

The trial court ruled that the plaintiff's military health plan coverage was not subject to the mandatory setoff provision of MCL 500.3109(1); MSA 24.13109(1), and held that DAIIE was liable for no-fault benefits in the amount of $145,150 plus interest. DAIIE appealed and the Court of Appeals reversed, 144 Mich App 394; 375 NW2d 754 (1985). This Court granted leave to appeal, 425 Mich 851 (1986).

II

Michigan's no-fault act, MCL 500.3105; MSA 24.13105, dramatically changed the law with regard to automobile accidents. If an insured is injured in an automobile accident, the no-fault act provides that insurers are required to pay the medical and wage-loss expenses of their policyholders without regard to fault.

In *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978), the Court stated:

> The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.

We have also recognized a complementary legislative objective which is the containment of the premium costs of no-fault insurance. *O'Donnell v*

*State Farm Mutual Automobile Ins Co,* 404 Mich
524, 567; 273 NW2d 829 (1979), app dis 444 US 803
(1979).

In this case, the plaintiff argues that the pay-
ments made by the government are not benefits
required to be subtracted from a no-fault recovery
because the military's health plan constitutes
"other health and accident coverage."

The defendant argues that the Court of Appeals
correctly decided that the payments made on
plaintiff's behalf are governmentally mandated
payments which are benefits required to be sub-
tracted from a no-fault recovery.

In order to decide this issue, we must determine
the Legislature's intent in enacting these provi-
sions of the no-fault act and review this Court's
previous interpretations of these statutes.

III

The no-fault act in MCL 500.3109(1); MSA
24.13109(1) indicates that government benefits pro-
vided for under the laws of any state or federal
government are to be subtracted from personal
protection benefits paid:

> Benefits provided or required to be provided
> under the laws of any state or the federal govern-
> ment shall be subtracted from the personal protec-
> tion insurance benefits otherwise payable for the
> injury.[3]

Another provision of the no-fault act, MCL
500.3109a; MSA 24.13109(1) permits coördination
of no-fault benefits with "other health and acci-
dent coverage" so that other payments may be set
off against no-fault benefits:

---

[3] Section 3109(1) was part of the no-fault act as originally enacted.
1972 PA 294.

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.[4]

In *O'Donnell, supra,* the Court sustained the constitutionality of the mandatory setoff required under § 3109(1). The legislative history of § 3109(1) was stated in *O'Donnell, supra,* 544-545:

The history of § 3109(1) indicates that the Legislature's intent was to require a set-off of those government benefits that duplicated the no-fault benefits payable because of the accident and thereby reduce or contain the cost of basic insurance.

In a letter to the Governor from the Commissioner of Insurance analyzing a series of proposed no-fault bills introduced in 1971, none of which contained a set-off provision, the Commissioner criticized the bills because they tended to "increase the duplication and overlap between auto insurance and other insurance programs, sick leave programs and social security." Subsequent bills did contain set-off provisions. The final version of § 3109(1) was similar to an amendment suggested by the Commissioner. According to the Commissioner, the purpose of the amendment was "to provide a more complete and effective coördination of benefits between Michigan auto insurance and the benefits provided by the laws of all the states and the federal government." As noted by Justice WILLIAMS in his opinion in this case, the

---

4 Section 3109a is an amendment enacted after the passage of the no-fault act. 1974 PA 72.

Commissioner's comments "make clear that the purpose of the § 3109(1) statutory scheme was framed in terms of maintaining or reducing premium costs for all insureds through the elimination of duplicative benefits recovery."

In *O'Donnell,* this Court also held that social security survivors' benefits were required to be subtracted from survivors' benefits payable under no-fault. However, the decision was limited to the facts of that case and did not "purport to encompass other possible government benefits." *Id.,* 538.

In *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), this Court reviewed the legislative intent in enacting § 3109a. The Court reviewed a letter addressed to the Governor from the Commissioner of Insurance which explained the purpose of 1974 House Bill 5724[5] and examined the House Insurance Committee's analysis of HB 5724. *LeBlanc, supra,* 194-197.

The issue in *LeBlanc* was whether Medicare payments must be deducted from no-fault benefits under § 3109(1) or whether such payments are subject to a voluntary setoff under § 3109a. After reviewing the legislative history of § 3109a, this Court stated:

> Section 3109a permits a set-off of "other health and accident coverage" at the insured's option. This provision, like § 3109(1), serves to eliminate duplicative recovery and to contain or reduce insurance costs; additionally, it allows individuals to tailor their insurance coverage to their own special needs. Cost reduction is implemented under § 3109a on an individual basis rather than in blanket fashion. [*LeBlanc, supra,* 197.]

As this Court noted in *LeBlanc, supra,* 202-203:

---

[5] Subsequently enacted as 1974 PA 72, the current version of MCL 500.3109a; MSA 24.13109(1).

The legislative history of § 3109a suggests that the Legislature, in leaving the phrase "other health and accident coverage" unmodified by the word private, intended to give unrestrained application of § 3109a to health and accident coverage from whatever source. The analysis of HB 5724 prepared by the House Insurance Committee indicates that the bill would eliminate duplicate coverage by making private accident and health insurance, as well as the group plans of Blue Cross and Blue Shield, primary sources of reimbursement for accident-related medical and hospital expenses. Thus, both private and non-private plans were within the scope of the bill.

IV

We must, therefore, determine whether the plaintiff's military health plan constitutes "other health and accident coverage" and therefore is within the scope of § 3109a.

The Court of Appeals in *Crowley* held that the plaintiff's military benefits were within the mandatory setoff provision of § 3109(1), citing *Bagley v State Farm Mutual Automobile Ins Co,* 101 Mich App 733; 300 NW2d 322 (1980), and *Dengler v State Farm Mutual Automobile Ins Co,* 135 Mich App 645, 650; 354 NW2d 294 (1984).

The Court of Appeals stated:

The Court in *LeBlanc,* specifically limited its holding to only Medicare and did not express an opinion as to other possible forms of health coverage. 410 Mich 207. Furthermore we find the two programs distinguishable. The military is required to provide medical care, 10 USC 1071, while Medicare is only a federally funded insurance program for the elderly. 410 Mich 198. The military provides 100 percent coverage and Medicare only covers a percentage of the cost. Additionally, we

note that neither party has presented evidence regarding the essential purpose of § 3109a, which was to reduce duplicative insurance coverage, thereby reducing insurance premiums. 410 Mich 197. Plaintiff has not presented evidence that defendant was unaware of his military status and that such status would have reduced his no-fault premiums. Nor has plaintiff shown that he has incurred any expenses not already covered by the military. While *LeBlanc* stated that a certain amount of duplicate coverage may be unavoidable, nowhere do we find support for the proposition that plaintiff should be entitled to a windfall in the amount of the expense of his entire medical care. Permitting plaintiff to retain this windfall would be contrary to the purposes of the no-fault act. [*Crowley,* 144 Mich App 397.]

The provisions of a serviceman's medical and dental health plan are stated at 10 USC 1071 *et seq.* The purpose of such coverage is "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents."

In addition, after a serviceman has been retired from active duty because of his disability, he is entitled to health care from the Veterans Administration as provided by 38 USC 101 *et seq.*

We note that Congress has amended 10 USC 1071 numerous times. In one of the amendments, Congress expanded the health benefits of military personnel to make the military's benefits "identical to those authorized under the high option Blue Cross-Blue Shield plan that is available to Federal civilian employees."[6]

The principal effect of the legislation was to

---

[6] SB 1434, 89th Cong, 2nd Sess, reprinted in 1966 US Code Cong & Ad News 3087.

provide military personnel and their dependents the same types of medical care (both hospitalization and out-patient) that are "presently authorized for Federal civilian employees under the Blue Cross-Blue Shield high option program."[7]

Plaintiff argues that the military's health plan is not gratuitous, but rather a fringe benefit of employment and part of a serviceman's compensation. *Lapidula v Government Employees Ins Co,* 146 NJ Super 463; 370 A2d 56 (1977); *Smith v United Services Automobile Ass'n,* 52 Wis 2d 672; 190 NW2d 873 (1971); *Whitaker v Talbot,* 122 Ga App 493; 177 SE2d 381 (1970).

Meanwhile, defendant DAIIE argues that the health coverage provided to the plaintiff is the type of government benefit provided under the laws of the federal government and therefore required under the provision of § 3109(1) to be subtracted from a no-fault recovery. Defendant argues that the military and veterans benefits are creatures of federal statutes, the benefits are mandatory as opposed to discretionary, and the benefits are provided by the federal government.

Whether no-fault insurers are allowed to set off payments from a military health plan is an issue of first impression in this Court. The extent to which a no-fault insurer may set off benefits payable by collateral sources is still unsettled.[8]

---

[7] *Id.* The legislative history also states that the bill "is more generous for the individual beneficiary since the Government would pay a greater portion of the cost of the benefits of this legislation than is paid by the Government under the civilian high option plan." *Id.,* 3087-3088.

[8] Anno: *Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources,* 10 ALR4th 996. *Hoeschen v Mutual Service Casualty Ins Co,* 359 NW2d 677 (Minn App, 1984) (no-fault insurers may not coördinate benefits with benefits paid by the United States Army, nor may they offset their own obligation with the amounts paid by the Army). *United Services Automobile Ass'n v*

Plaintiff cites and relies upon three cases which each characterize a serviceman's military health plan as a benefit of employment in the context of the issues addressed.

In *Lapidula, supra,* the court interpreted New Jersey's no-fault law as providing that two injured servicemen and a dependent could recover from their no-fault insurer for medical expenses, although they received medical care without charge for their automobile-accident-related injuries at an Army hospital. The result was questioned in *Sanner v Government Employees Ins Co,* 150 NJ Super 488; 376 A2d 180 (1977), which held that a no-fault carrier was not liable for a serviceman's medical expenses. Ultimately, the New Jersey Legislature amended its no-fault statute in 1981 and stated that "benefits . . . that are provided under Federal law to active and retired military personnel shall be deducted" from benefits collectible under no-fault.[9]

Two additional cases plaintiff cites have characterized a serviceman's military health plan as a benefit of employment. Both were decided prior to enactment of no-fault provisions.

As to the nature of a serviceman's health plan, the court in *Whitaker v Talbot, supra,* 495, stated in part:

> "The care [the serviceman and his dependents] receive is actually a part of the wages paid in return for the service he performs." . . . "It is

---

*Holland,* 283 So 2d 381 (Fla App, 1973) (United States Navy officer entitled to recover disability benefits on the basis of wage loss from no-fault insurer despite receiving full pay from employer under wage continuation plan), but see *Hohman v United States,* 470 F Supp 769 (1979) (serviceman in United States Air Force is not entitled to recovery from his no-fault insurer under Pennsylvania's no-fault act where medical services were provided to him by the federal government at no cost to him).

[9] NJ Stat Ann, § 39:6A-6.

common knowledge that when service pay is considered by Congress, hospitalization and other privileges offered to servicemen are always alluded to as being part of compensation."

Similarly, the Supreme Court of Wisconsin, in examining the nature of a serviceman's Navy-provided hospital and medical services determined:

> We deal with something more than a gratuity to be bestowed at the option of the employer as a gift to its employees. We deal rather with a perquisite of employment, one of the benefits provided by the Congress, along with the serviceman's pay, as compensation for services rendered the members of the armed forces. [*Smith v United Services Automobile Ass'n, supra,* 676.]

We find persuasive the characterization of health care provided by the Navy and the Veterans Administration as a benefit of employment rendered to members of the armed services.

While it is true, as defendant asserts, that such health care is provided by federal statute, it is the nature of the benefits and services that are provided that supports our analysis, not the fact that the health care services are derived from a collateral government source.

As this Court stated in *LeBlanc, supra,* 201, "[s]ection 3109a makes no internal reference, express or implied, to § 3109(1); thus an interpretation dependent upon language set forth in § 3109(1) is pointless." Both private and governmental collateral sources of health and accident coverage come within the scope of § 3109a, because the Legislature left the phrase "other health and accident coverage" unmodified by the word private. In addition, § 3109a does not distinguish between health and accident plans in which the

recipient pays the premiums and plans in which the employer pays the entire premium. Because the Legislature did not distinguish between these types of plans, we decline to do so.

Meanwhile, DAIIE argues that the health coverage provided to the plaintiff is a type of government benefit provided under the laws of the federal government, and, therefore required under § 3109(1) to be subtracted from a no-fault recovery.

We must then consider whether the health care provided by the Navy and the Veterans Administration would come within § 3109(1) or § 3109a.

Defendant argues that the plaintiff's military and veterans' benefits qualify for a § 3109(1) setoff because of the express statutory language, as well as the test announced by this Court in *Jarosz v DAIIE*, 418 Mich 565, 577; 345 NW2d 563 (1984):

> [S]tate or federal benefits "provided or required to be provided" must be deducted from no-fault benefits under § 3109(1) if they:
> (1) Serve the same purpose as the no-fault benefits, and
> (2) Are provided or are required to be provided as a result of the same accident.

This Court developed the two-part test in *Jarosz* in order to determine which payments from government programs are the type of benefits required to be deducted under § 3109(1) and which are not.

The first criterion of the *Jarosz* test, the defendant argues, requires that the government benefit be analyzed to determine the ultimate beneficiary, the nature of the benefits, the reason for paying them, and the events triggering entitlement to them. *Jarosz, supra,* 580. In applying the test, defendant maintains that the plaintiff's military

and veterans' benefits serve the same purpose and were provided as a result of the same accident as the duplicative no-fault benefits. Both benefits have the same beneficiary, namely the plaintiff; the nature of the benefits is identical, namely medical and disability; and the same reason or event, an automobile accident, triggered plaintiff's entitlement to each type of benefit.

Plaintiff argues that health and accident coverage, while it may sometimes overlap with no-fault benefits, does not serve the same purpose. Plaintiff argues that all family members are beneficiaries of a broad-based medical program, but only an injured party can recover under no-fault. Health coverage applies to all preventive, diagnostic, and therapeutic medical needs, while no-fault applies only to the treatment and rehabilitation of injuries incurred in a specific accident. Health coverage is provided as an employee fringe benefit while no-fault medical payments are made to assure prompt treatment of accident-related injuries and thereby to reduce litigation. Plaintiff also argues that entitlement to health coverage is triggered by employment while entitlement to no-fault benefits is triggered by an accident.

Plaintiff quotes *Jarosz, supra,* 577, n 9: "It is not sufficient that the challenged benefit payment has the same *effect* as the no-fault payment; it must have the same *purpose.*" (Emphasis in original.) While health and accident coverage may have the same effect, plaintiff argues that his medical coverage does not serve the same purpose as the medical payments made under the no-fault act and does not fall within § 3109(1).

As to the second part of the two-pronged test, whether the benefits are required as a result of the same accident, the focus is the triggering event, plaintiff asserts. Plaintiff was entitled to health

coverage because of his government employment, and he would have been entitled to this coverage during the course of his employment regardless of whether the accident occurred, plaintiff maintains. Thus, although the accident gave rise to the particular medical treatment involved, the triggering mechanism was not the same.

After reviewing the arguments and our decisions in *Jarosz* and *LeBlanc,* we conclude that the decision in *LeBlanc* is controlling in this case. In *LeBlanc,* 205, this Court determined that Medicare is "other health and accident coverage" qualifying for § 3109a's permissive setoff. We stated that there was "no just reason to differentiate Medicare from other, more traditional, forms of health and accident coverage which irrefutably are within the scope of § 3109a." Similarly, we find that the United States Navy and the Veterans Administration provide medical and hospital services on behalf of servicemen who require health care.

The plaintiff's health care was a fringe benefit of employment to servicemen in the United States Navy. There is no reason to distinguish this plan to provide health and hospital services from other forms of health and accident coverage which would provide its recipients with duplicative recovery.

Under § 3109a, insureds may opt to coördinate their health care benefits with their no-fault benefits. By doing so, insureds decide to pay a reduced no-fault insurance premium and to forgo a dual recovery. However, in this case, there was no coördination. The plaintiff did not own a car and did not have a no-fault policy to coördinate with his health care benefits.

To the extent that they are inconsistent with our decision, we would overrule the decisions of

the Court of Appeals in *Bagley v State Farm, supra,* and *Dengler v State Farm, supra,* 650.

The decision in *Bagley* preceded our decision in *LeBlanc. Bagley* was a one-paragraph decision. No facts were given and there was no discussion or analysis of § 3109a or its application to the payments made in that case.

In *Dengler,* the Court of Appeals upheld a directed verdict that there was no connection between the plaintiff's injuries and an automobile accident and therefore no-fault payments were not owed. In dicta at the end of the opinion, the *Dengler* Court cited *Bagley,* stating that the setoff provision of § 3109(1) applied to medical benefits received from the Veterans Administration. *Dengler* did not cite *LeBlanc,* nor did it discuss the applicability of § 3109a.

Defendant also notes that plaintiff's entitlement to no-fault personal protection insurance benefits is not predicated on his own no-fault insurance coverage because the plaintiff did not have his own no-fault policy. Rather, plaintiff's entitlement to no-fault coverage is based on his status as an occupant of a motor vehicle.

Plaintiff claimed no-fault personal injury protection benefits under the no-fault policy of Richard Belloni, the owner and operator of the car involved in the accident.

The no-fault act provides coverage for occupants of insured motor vehicles under MCL 500.3114(4); MSA 24.13114(4):

> Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the vehicle occupied.

(b) The insurer of the operator of the vehicle occupied.

Defendant argues that § 3114(4) of the no-fault act is both a priority and an entitlement provision. *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231; 293 NW2d 594 (1980). Defendant maintains that the intent of the Legislature was to make an injured person's own no-fault coverage primary, and only secondarily or as a last resort can an uninsured person look to the no-fault policy of another for coverage. *Shinabarger v Citizens Ins Co,* 90 Mich App 307; 282 NW2d 301 (1979), lv den 407 Mich 895 (1979).

Defendant maintains that assuming that military and veterans' benefits could qualify as "other health and accident coverage" subject to optional or coördinated setoff, and therefore possible double recovery, the explicit language of § 3109a makes that provision inapplicable to the plaintiff:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

Defendant argues that the second sentence of § 3109a—"and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in

the same household"—is expressly inapplicable to the plaintiff. In addition, the defendant maintains that the plaintiff has secondary status under the no-fault act through § 3114(4).

Plaintiff counters that § 3109a applies in this case. Section 3109a provides for a very limited offset, so that if an insured chose to coördinate health and no-fault coverages, the coördination would apply only to the insured, a spouse, and members of the household. A passenger who was covered by a no-fault policy could recover from both the health insurer and the no-fault insurer. Even if the policy were coördinated, plaintiff argues, the occupant would have double recovery. Only the insured, a spouse, and any relative of either living in the same household would be bound by the coördinated policy.

The insured's policy in this instance was not a coördinated policy. This means that the insured chose to pay the full premium rate for his no-fault automobile insurance. We find that plaintiff is entitled to full PIP coverage under Mr. Belloni's no-fault policy. Since Mr. Belloni's policy was not coördinated, we need not address what the result would be if the policy were coördinated.

We find no merit in the defendant's argument that plaintiff has no basis for recovery of benefits because he had no PIP coverage of his own. The Legislature specifically provided in § 3114(4) that an occupant was entitled to no-fault PIP benefits from the insurer of the owner or registrant of the vehicle occupied. It would be unjust to deprive the plaintiff of PIP benefits because he seeks those benefits not through his own insurance policy, but through the insurance policy of the owner or registrant of the vehicle occupied.

The defendant argues that there is a double recovery in this case and that allowing the plain-

tiff to recover under Mr. Belloni's policy will not be consistent with the goal of containing insurance premium rates. But the insurer in this case will only be fulfilling its statutory obligation under § 3114(4) and its contract of insurance.

The insurance contract provides:

> To pay to or for the benefit of an injured person (or, in case of his death, to or for the benefit of his dependent survivors,) who sustains bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle:
>
> (a) Medical Benefits Coverage (Allowable Expenses)
> Medical benefits consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation.

The policy defined an injured person as follows:

> (b) "injured person" means a natural person suffering accidental bodily injury who is:
> (1) the named insured and any relative,
> (2) any other person who sustains bodily injury
> (i) while occupying the insured motor vehicle, or
> (ii) as a result of an accident involving the insured motor vehicle while such other person is not occupying any motor vehicle.

The defendant will be paying once under its policy, not twice. Therefore, there will not be a double payment by the defendant. Since the insurer is only being required to fulfill its obligations, this result should not conflict with the Legislature's goal of containing insurance rates.

In addition, the Legislature specifically allowed an insured to so structure health and no-fault insurance coverage so as to be able to recover benefits from both insurers. The Legislature made

coördination under § 3109a voluntary, not manda-tory. Such a result is consistent with the decision in *LeBlanc, supra.*

We therefore would hold that the plaintiff's military health plan constitutes "other health and accident benefits," within the meaning of § 3109a and further would find that payments from the United States Navy and the Veterans Administra-tion should not be set off from amounts payable under the applicable no-fault policy.

CAVANAGH, J., concurred with ARCHER, J.