CLUTE v GENERAL ACCIDENT ASSURANCE COMPANY OF
CANADA

Docket Nos. 103878, 105495. Submitted January 10, 1989, at Detroit.
Decided June 8, 1989.

Wanda Clute, a Canadian citizen and an Oneida Indian, sustained
injury in Michigan while sleeping in a parked van that was
struck by another vehicle. The van was insured by General
Accident Assurance Company of Canada, a Canadian insurer
which had filed with the Michigan Insurance Commissioner a
certification of compliance pursuant to § 3163 of the no-fault
automobile insurance act, thereby subjecting itself to the provi-
sions of the no-fault act. Clute brought an action in Wayne
Circuit Court seeking personal protection insurance benefits
from General Accident. The trial court, Henry J. Szymanski, J.,
denied plaintiff's pretrial motion for summary judgment and, at
trial, directed a verdict in favor of defendant, ruling that
plaintiff was not entitled to PIP benefits since the van was not
being used as a motor vehicle at the time of plaintiff's injury. A
divided panel of the Court of Appeals affirmed the trial court.
142 Mich App 640 (1985). The Supreme Court reversed the
Court of Appeals for the reasons stated by Judge HOOD in his
dissent and remanded the matter to the trial court for entry of
an order granting summary judgment in favor of plaintiff. 428
Mich 871 (1987). On remand, the trial court granted summary
disposition in favor of plaintiff and, after a hearing, awarded
plaintiff $390,739 in damages consisting of, among other things,
PIP and work-loss benefits, and penalty interest. In making the
award, the trial court refused to set off amounts received by
plaintiff as benefits from the Ontario Health Insurance Plan, a
public health insurance program for residents of Ontario, Can-
ada, and amounts received from the Oneida Band. Defendant
filed appeals from the order regarding plaintiff's entitlement to
work-loss benefits and from the judgment awarding plaintiff no-
fault benefits and penalty interest.
The Court of Appeals held:

REFERENCES
Am Jur 2d, Automobile Insurance §§ 361, 368.
Automobile insurer's liability for statutory excess interest for de-
layed payment of no-fault claim. 14 ALR4th 761.

1. Defendant is not entitled to a setoff pursuant to § 3109(1) of the no-fault act for the amounts received by plaintiff from the Ontario Health Insurance Plan and the Oneida Band. Section 3109(1) provides that benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the PIP benefits otherwise payable for an injury. This section, by its clear terms, does not apply to the amounts plaintiff received from the Ontario health plan or the Oneida Band.

2. Contrary to defendant's claim, the certification of compliance it filed with the insurance commissioner does not authorize the setoff of Ontario health plan benefits or any other Canadian benefits from no-fault benefits payable under defendant's policy.

3. The trial court erred in finding that plaintiff was temporarily unemployed on the date of the accident so as to entitle her to work-loss benefits pursuant to §§ 3107(b) and 3107a of the no-fault act. An insured may be found to be temporarily unemployed for purposes of these sections where, although the insured is unemployed at the time of the accident, the insured is, or would have been but for the accident, actively seeking employment and there is evidence showing the unemployed status would not have been permanent if the injury had not occurred. However, as in this case, a bare assertion of intent to secure employment, absent independent corroboration of such intent or actions taken to obtain employment during the period of unemployment, is insufficient to render an injured insured temporarily unemployed. The award of work-loss benefits to plaintiff is reversed.

4. The trial court did not err in determining that penalty interest pursuant to § 3142 of the no-fault act was assessable against defendant thirty days after plaintiff submitted proof of loss rather than, as defendant asserted, thirty days from the date of the Supreme Court decision against defendant. Penalty interest must be assessed against an insurer who refuses to pay benefits and is determined later to be liable for payment of those benefits, even where the denial of coverage was based on then-existing law and was made in good faith.

Affirmed in part and reversed in part.

1. Insurance — No-Fault — Personal Protection Insurance Benefits — Setoff — Government Benefits.

The provision of the no-fault automobile insurance act which states that benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from personal protection insurance benefits other-

wise payable for an injury, by its clear terms, does not apply to benefits paid by a foreign government to one of its citizens, or by an Indian tribe to one of its members, for injury sustained in an automobile accident in Michigan (MCL 500.3109[1]; MSA 24.13109[1]).

2. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — TEMPORARY UNEMPLOYMENT.

An individual insured under a policy of no-fault automobile insurance may be found to be temporarily unemployed for purposes of collecting work-loss benefits pursuant to the no-fault act where, although he has lost a job, he is actively seeking employment and it is shown that his unemployed status would not have been permanent but for the automobile accident which caused his injury; however, a bare assertion of intent to secure employment, absent independent corroboration of such intent or actions taken to obtain employment during the period of unemployment, is insufficient to render the insured temporarily unemployed (MCL 500.3107[b], 500.3107a; MSA 24.13107[b], 24.13107[1]).

3. INSURANCE — NO-FAULT — PENALTY INTEREST.

Penalty interest must be assessed against a no-fault insurer who refuses to pay benefits and is later determined to be liable for payment of those benefits, even where the denial of coverage was based on then-existing law and was made in good faith (MCL 500.3142; MSA 24.13142).

*Beverly Clark,* for plaintiff.

*Eugene S. Hoiby* and *Robert J. Kanter,* for defendant.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry J. Iwasko* and *William A. Chenoweth,* Assistant Attorneys General, for the Commissioner of Insurance.

Before: MAHER, P.J., and CYNAR and GRIFFIN, JJ.

PER CURIAM. In separate appeals as of right,

which were consolidated for consideration by this Court, defendant challenges the September 17, 1987, order and the December 4, 1987, judgment (as amended) of the Wayne Circuit Court which, together, awarded plaintiff benefits under the Michigan no-fault insurance act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, including personal injury protection benefits, work-loss benefits, and statutory interest. We affirm in part and reverse in part.

I

This case is before this Court for a second time. In a prior appeal, we reviewed the propriety of a directed verdict in favor of defendant. *Clute v General Accident Assurance Co of Canada,* 142 Mich 640; 369 NW2d 864 (1985), rev'd 428 Mich 871; 401 NW2d 615 (1987). The underlying facts of the case are as follows.

The plaintiff was one of a group of people who rented a van in London, Ontario, intending to attend a gathering in Lansing. They stopped at Detroit in order to stay overnight. The plaintiff decided to sleep in the van on a couch which had been placed there by one of the members of her group. Originally the van was parked behind the house, but later was moved to the street. Still later it was moved into the yard near a bedroom window of the house. Two other persons also slept in the van.

At approximately 3 A.M., a car, which was insured by State Farm Insurance Company, came through a service drive, jumped the curb and hit the van. The plaintiff suffered severe injuries. The defendant was the insurer of the van. A claim was made on behalf of plaintiff against the defendant, and some PIP benefits were paid. Eventually, however, the defendant refused to pay for additional

replacement services, or to pay for a modified transportation vehicle, and suit was started. [142 Mich App 641-642.]

Prior to trial, plaintiff moved for summary disposition, asserting that defendant, as insurer of the van, was liable to pay plaintiff PIP benefits. The motion was denied and the case went to trial. At the conclusion of plaintiff's proofs, defendant moved for, and was granted, a directed verdict. The court reasoned that because the van was not being used as a motor vehicle at the time of the accident, plaintiff was not entitled to no-fault benefits from her insurer, i.e., defendant.

Plaintiff appealed that decision to this Court. In a two to one decision, this Court agreed with the lower court. Accordingly, the directed verdict in favor of defendant was affirmed. 142 Mich App 642-644. Judge HOOD, in dissent, believed that the majority's inquiry into whether the van was being used as a motor vehicle at the time of the collision was irrelevant since the automobile which collided with the van was being used as a motor vehicle. Judge HOOD would have held defendant liable for no-fault benefits. *Id.,* pp 644-645.

Plaintiff appealed to the Supreme Court which, after oral arguments, reversed the *Clute* majority for the reasons stated in Judge HOOD's dissent. The matter was remanded to the trial court with directions to enter summary judgment in favor of plaintiff on the question of defendant's liability. 428 Mich 871.

On remand, plaintiff was granted summary disposition as directed. The trial court thereafter conducted a hearing on the issue of damages and determined that plaintiff was entitled to benefits totalling $390,739. That amount included, among other things, PIP and work-loss benefits, and no-

fault interest.[1] The court declined, over defendant's objections, to offset the amount by the benefits plaintiff received from the Ontario Health Insurance Plan (OHIP), a Canadian public health insurance program available to Ontario residents, and from the Oneida Band, the Canadian Indian tribe of which plaintiff is a member. On September 17, 1987, the court entered an order regarding plaintiff's entitlement to work-loss benefits. On December 4, 1987, judgment was entered against defendant, detailing the amount of benefits owing to plaintiff (that judgment was subsequently amended to correct a typographical error and to insert a figure omitted from the original). Defendant claims its appeals as of right from that order and judgment.

II

As its first issue, defendant argues that the trial court erred in refusing to grant it a setoff as to benefits plaintiff received from OHIP. We find no error.

Section 3109(1) of the no-fault act, MCL 500.3109(1); MSA 24.13109(1), states that "[b]enefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury." Under that section, it is clear that defendant would be entitled to a setoff had plaintiff received the benefits in question from the United States government or a state government since they seem to duplicate the no-fault benefits. *Jarosz v DAIIE,*

---

[1] In a separate and unconsolidated appeal, *Clute v General Accident Assurance Co of Canada,* 177 Mich App 411; 442 NW2d 689 (1989), defendant also appealed the award of attorney fees to plaintiff under the no-fault act, MCL 500.3148(1); MSA 24.13148(1), and court rule, MCR 2.403(O).

418 Mich 565, 573-574; 345 NW2d 563 (1984). We cannot, however, read § 3109(1) so broadly as to permit a setoff of benefits received from a foreign government. In several other sections of the no-fault act, the Legislature has made specific references to Canada where it intended the act to affect no-fault participants in regards to that country or its citizens. See MCL 500.3111 and 500.3131; MSA 24.13111 and 24.13131. Had the Legislature intended that no-fault benefits be offset by the receipt of Canadian benefits, we believe it would have stated so expressly. By not mentioning benefits received from the Canadian government in the setoff scheme of § 3109(1), we can only assume the omission constitutes a "legislatively created distinction" so as to preclude such a setoff. See *Dowling v Auto Club Casualty Ins Co,* 147 Mich App 482, 486; 383 NW2d 233 (1985).

In holding that § 3109(1) does not authorize the setoff of benefits received from a foreign government, we are not unmindful of the policy considerations behind the no-fault act which would favor such a setoff, i.e., avoiding duplicative recovery and reducing premium costs. However, to interpret § 3109(1) in the manner urged by defendant would be an act of judicial legislation. It is not the function of this Court to judge the wisdom or desirability of certain legislative policy determinations. *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524, 543; 273 NW2d 829 (1979), reh den 406 Mich 1103 (1979) (citing *New Orleans v Dukes,* 427 US 297, 303; 96 S Ct 2513; 44 L Ed 2d 511 [1976]). We decline to extend § 3109(1) beyond its plainly expressed meaning.

Defendant next asserts that § 3109(1) applies to the OHIP benefits received by plaintiff because it filed a "certification of compliance" in accordance with MCL 500.3163(1); MSA 24.13163(1) and is,

therefore, entitled to the same rights and immunities as a Michigan-based insurer, MCL 500.3163(3); MSA 24.13163(3). However, this assertion merely begs the question in dispute. Under our interpretation of § 3109(1), not even a Michigan-based insurer would be entitled to a setoff of benefits received from the Canadian government.

Defendant further asserts that the certification of compliance expressly permits the setoff of the OHIP benefits. The pertinent language of the certification provides:

> Such certification is further conditioned to the extent that *if such policy* also provides direct benefits without regard to fault pursuant to contractual agreement, *the law of Canada* or the law of such other state or territory, then (1) the personal and property protection insurance benefits provided for and in accordance with this certification *shall not apply to the extent that benefits for the same elements of loss are paid, payable or required to be provided under* such contractual agreement, *the law of Canada* or the law of such other state or territory, and (2) the total amounts of personal and property protection insurance benefits which would be payable in accordance with this certification *shall be reduced by the amount paid, payable or required to be provided for the same elements of loss under* such contractual agreement, *the law of Canada* or the law of such other state or territory. [Emphasis added.]

Defendant interprets the language above to mean that any covered loss paid pursuant to Canadian law which duplicates benefits under the no-fault act is subject to setoff against the amount of benefits owed under the policy of insurance issued by defendant. Plaintiff apparently concedes that

the certification has that effect, but argues that the commissioner of insurance exceeded statutory authority by allowing the setoff of Canadian benefits.

Upon invitation of this Court, the commissioner of insurance filed an amicus curiae brief which, we believe, assigns the proper interpretation to the certification language. The commissioner states:

> It is the position of the Commissioner of Insurance that the certification (assuming that it is binding on all the parties) does *not* purport to authorize setoff of OHIP benefits. Instead, the certification by its own language only provides that benefits otherwise payable under *Appellant's policy* are not duplicated by coverage resulting from filing the certification. The certification simply does not address the separate question of whether the Appellant can set off payments *from sources other than its policy,* such as OHIP benefits.
>
> &ast;  &ast;  &ast;
>
> Under this provision, if the insurer's *policy* provides first person benefits without regard to fault (either by contract, or pursuant to state or Canadian law), then benefits payable "*in accordance with this certification* shall not apply" to the extent that benefits for the same elements of loss are payable under the policy. An insurer does not have to pay first party benefits "for the same elements of loss" pursuant to its policy and again pursuant to the certification. This language does not say whether the insurer can set off benefits provided *outside its policy* (such as OHIP benefits). [Emphasis in original.]

Because the certification of compliance does not, by its terms, purport to authorize the setoff of Canadian benefits payable outside the policy, de-

fendant is not entitled to a setoff of the OHIP benefits received by plaintiff.[2]

### III

Defendant next argues that the benefits plaintiff received from the Oneida Band should also be set off against the no-fault benefits paid by defendant. For the same reasons as discussed in issue I, we disagree. The Oneida Band benefits were not provided by a state government or our federal government. Hence, they cannot be set off against plaintiff's no-fault benefits.

### IV

As its next issue on appeal, defendant asserts that the trial court erred in finding that plaintiff was temporarily unemployed on the date of the accident, thus entitling her to work-loss benefits. We agree.

Sections 3107(b) and 3107a of the no-fault act, taken together, provide that an insured who is temporarily unemployed at the time of the accident is entitled to work-loss benefits for a maximum period of three years following the accident in an amount based upon the income earned during the insured's last month of full-time employment, but not to exceed $20 per day. MCL 500.3107(b) and 500.3107a; MSA 24.13107(b) and 24.13107(1). An insured may be found to be tempo-

[2] In response to the insurance commissioner's amicus curiae brief, defendant asserts that, under the terms of the insurance policy itself, setoff of OHIP benefits was authorized. A review of the record reveals that defendant failed to raise this claim at the September 14, 1987, motion hearing. Moreover, throughout these appellate proceedings, including oral arguments, defendant challenged only the trial court's ruling that neither the Michigan no-fault statutes nor the certification of compliance authorized the setoff. We therefore decline to review this newly raised factual question.

rarily unemployed for purposes of §§ 3107(b) and 3107a where, although he or she is unemployed at the time of the accident, that person is, or would have been but for the accident, actively seeking employment and there is evidence showing the unemployed status would not have been permanent if the injury had not occurred. See *Cole v DAIIE,* 137 Mich App 603, 609-610; 357 NW2d 898 (1984); *Szabo v DAIIE,* 136 Mich App 9, 13-14; 355 NW2d 619 (1983). However, a bare assertion of intent to secure employment, absent independent corroboration of such intent or actions taken to obtain employment during the period of unemployment, is insufficient to render the injured person "temporarily unemployed." *Cole, supra,* p 610; *Oikarinen v Farm Bureau Mutual Ins Co of Michigan,* 101 Mich App 436; 300 NW2d 589 (1980), lv den 411 Mich 908 (1981).

In the case at bar, plaintiff worked in New York as part of the Young Adult Conservation Corps from June to September of 1978. She quit the job to help care for her disabled grandmother. She also reenrolled in high school at that time but dropped out in November of 1978. From that date until the accident in May of 1979, plaintiff stayed home full time with her grandmother and assisted with the household chores. Although she claimed her grandmother paid her $3 per hour for her services, she also stated that between November of 1978 and May of 1979 she did not earn any money. Plaintiff further testified that, prior to the accident, she had planned to apply for a job on the reservation assisting older people. She admitted, though, that she had never submitted an employment application to that end. Plaintiff presented no witnesses who corroborated her intention to seek work.

Given the above facts, we hold the trial court

538      179 Mich App 527          [June

clearly erred in finding that plaintiff was tempo-
rarily unemployed, within the meaning of
§§ 3107(b) and 3107a, and thus entitled to work-
loss benefits. It is undisputed that at the time of
the accident plaintiff was not employed and was
not actively seeking employment. Rather, the dis-
pute concerns whether plaintiff had presented
sufficient proof of an intention to return to work.
We do not believe that plaintiff's statement of
intention, absent some independent corroboration,
constitutes sufficient proof. Were we to hold other-
wise, the floodgates of liability for work-loss
benefits would be thrown wide open. Unemployed
insureds, although having no real intention of
seeking employment, could collect work-loss
benefits upon their own after-the-fact, self-serving
statements of intention. Consequently, we reverse
the trial court's award of work-loss benefits to
plaintiff.

v

As the final issue on appeal, defendant claims
the trial court erred in calculating no-fault penalty
interest as of thirty days after plaintiff submitted
proof of loss. Defendant asserts that its refusal to
pay was not unreasonable until the Supreme
Court rendered its decision in the prior appeal
and, therefore, interest should not begin accruing
until thirty days after that date.

Section 3142 of the no-fault act provides:

(1) Personal protection insurance benefits are
payable as loss accrues.

(2) Personal protection insurance benefits are
overdue if not paid within 30 days after an insurer
receives reasonable proof of the fact and of the
amount of loss sustained. If reasonable proof is not

supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date a draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery.

(3) An overdue payment bears simple interest at the rate of 12% per annum. [MCL 500.3142; MSA 24.13142.]

Contrary to what defendant asserts, a reasonable refusal to pay does not toll the accrual of penalty interest. Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable. This is true even where the refusal to pay was based on then-existing law and was made in good faith. *Bach v State Farm Mutual Automobile Ins Co,* 137 Mich App 128, 131-132; 357 NW2d 325 (1984), lv den 421 Mich 862 (1985); *Nash v DAIIE,* 120 Mich App 568; 327 NW2d 521 (1982), lv den 417 Mich 1088 (1983). See also *Joiner v Michigan Mutual Ins Co,* 161 Mich App 285, 291-295; 409 NW2d 808 (1987). Compare *Sharpe v DAIIE,* 126 Mich App 144; 337 NW2d 12 (1983) (where dispute concerned actual amount owing to plaintiff, and not an issue of priority, insurer was relieved of paying penalty interest where it withheld payment in good faith). The trial court did not err in awarding plaintiff penalty interest accruing thirty days after she presented reasonable proof of loss.

Affirmed in part and reversed in part. No costs, since neither party has prevailed in full.