DeMEGLIO v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 98197. Argued January 12, 1995 (Calendar No. 1). Decided June 20, 1995.

Susan DeMeglio, as next friend of Marisa DeMeglio, a minor and resident of Pennsylvania, brought an action in the Oakland Circuit Court against Auto Club Insurance Association, seeking no-fault medical benefits for Marisa's injuries suffered when her bicycle was hit by a car driven by an insured of the defendant in Oakland Township. State Farm, the Pennsylvania no-fault insurer of Marisa's parents, paid the first $10,000 of her medical bills as required under Pennsylvania law. Auto Club agreed to pay all medical bills beyond $10,000, but refused to duplicate the money paid by State Farm, arguing that § 3109(1) of the Michigan no-fault act compelled it to subtract benefits required to be provided by the laws of any state from the insurance benefits otherwise payable for the injuries. The court, Alice L. Gilbert, J., granted the plaintiff's motion for summary disposition, finding that the money provided by State Farm was not a "benefit" for purposes of § 3109(1). The Court of Appeals, WEAVER, P.J., and MURPHY and JANSEN, JJ., affirmed in an opinion per curiam (Docket No. 147586). The defendant appeals.

In separate opinions by Chief Justice BRICKLEY, joined by Justices LEVIN and RILEY, and by Justice BOYLE, the Supreme Court *held:*

Out-of-state insurance benefits that are required to be provided by state or federal law are benefits for purposes of § 3109(1) of the Michigan no-fault act and may be set off.

In this case, § 3109(1) is applicable, and § 3109a is not. The benefits received by the plaintiff from State Farm were required to be provided by Pennsylvania law. It is clear that these benefits serve the same purpose as the medical benefits provided by the Michigan no-fault insurance plans: to provide medical coverage in the event of an accident involving a motor vehicle. Both the benefits from State Farm and the benefits from the defendant were required to be provided as the result of the same accident. Thus, § 3109(1) is applicable. Section 3109a, however, restricts its applicability to benefits payable to certain persons, and because the plaintiff is not named in the

relevant policy, or related to anyone who is named, § 3109a does not apply.

Reversed.

Chief Justice BRICKLEY, joined by Justices LEVIN and RILEY, stated further that a benefit may be a "benefit" for purposes of § 3109(1), "coverage" for purposes of § 3109a, neither, or both. If a benefit falls under the ambit of both sections, § 3109a must be applied initially. When only one section is applicable, that section is applied without reference to the other. State or federal benefits provided or required to be provided must be deducted from no-fault benefits under § 3109(1) if they serve the same purpose as the no-fault benefits and are provided or are required to be provided as a result of the same accident.

Justice BOYLE, concurring, stated that § 3109a is not relevant in the present case because the plaintiff is neither the insured named in the policy, the spouse of the insured, nor a relative of either of those parties. Because the medical benefits paid on the plaintiff's behalf were provided pursuant to Pennsylvania state law and meet the requirements of *Jarosz v DAIIE,* 418 Mich 565 (1984), setoff is mandated under § 3109(1).

Justice CAVANAGH, joined by Justice MALLETT, dissenting, stated that foreign no-fault benefits fall outside the intended scope of § 3109(1) benefits.

Section 3163 clearly indicates that the liability of an automobile insurer of an out-of-state resident under Michigan no-fault law is not coextensive with the liability of a no-fault insurer of a Michigan resident. The out-of-state resident must own, operate, maintain, or use the motor vehicle that gives rise to the resident's accidental bodily injury. If not, the certified insurer of the out-of-state resident is not liable, and primary responsibility rests with the insurers of the Michigan resident owners or operators of vehicles involved in the accident.

In this case, State Farm's liability is not a controlling consideration under Michigan no-fault law, even though it had to pay no-fault benefits to its insured under Pennsylvania law. State Farm's liability does not come into play because the accident did not arise from an out-of-state resident's use of a motor vehicle as a motor vehicle; the out-of-state resident was using a bicycle when the accident occurred. Thus, the conditions for liability under § 3163 were not met, and primary liability lies with the insurers of the Michigan residents.

Justice WEAVER took no part in the decision of this case.

202 Mich App 361; 509 NW2d 526 (1993) reversed.

*John P. Strayer* for the plaintiff.

*Hanlon, Becker, Lanctot, McCutcheon, School-master & Taylor* (by *Jeffrey A. Oakes*) (*Nancy L. Bosh,* of counsel), and *Gross, Nemeth & Silverman, P.L.C.,* of counsel (by *Mary T. Nemeth*), for the defendant.

BRICKLEY, C.J. In this case we must decide whether medical benefits provided under an out-of-state no-fault automobile insurance plan in compliance with the laws of that state may be set off as "benefits" under § 3109(1) of the Michigan no-fault act. We would hold that out-of-state insurance benefits that are required to be provided by state or federal law are "benefits" under that section and may be set off accordingly.

I

In the summer of 1990, Marisa DeMeglio was injured when her bicycle was hit by a car in Oakland Township. The car was driven by Brian Sweeney and owned by his father, Michael Sweeney. Michael Sweeney had purchased no-fault insurance for the vehicle in Michigan from the defendant, Auto Club Insurance Association.

At the time of the accident, Marisa was twelve years old and resided with her parents in Pennsylvania. She was in Michigan to visit her grandparents. Marisa's parents had a Pennsylvania no-fault insurance policy from State Farm, but did not maintain any personal protection insurance under § 3101(1) of the Michigan no-fault act, and were not required to do so.

Marisa's injuries were serious, and she was hospitalized for seven days. State Farm paid for the first $10,000 of Marisa's medical bills, as required by Pennsylvania law. 75 Pa Cons Stat Ann 1711. In addition to their policy with State Farm, Mari-

sa's parents sought coverage under Mr. Sweeney's no-fault policy with the defendant. The defendant agreed to pay all medical costs beyond $10,000. It refused, however, to duplicate the money paid by State Farm, arguing that § 3109(1) of the Michigan no-fault act compelled it to subtract benefits required to be provided by the laws of any state from the insurance benefits otherwise payable for the injury under Michigan law.

The plaintiff filed suit against Auto Club, arguing that the money provided by State Farm was not a "benefit" under § 3109(1) and that the section was inapplicable. The trial court agreed and granted the plaintiff's motion for summary disposition. The defendant appealed in the Court of Appeals and that Court affirmed. 202 Mich App 361; 509 NW2d 526 (1993). The defendant then appealed in this Court. We reverse.

II

A

The Michigan no-fault act requires that any owner or registrant of a motor vehicle in this state carry automobile insurance that includes personal protection insurance. MCL 500.3101(1); MSA 24.13101(1). A person suffering bodily injury in an accident involving a motor vehicle while not an occupant of a motor vehicle, who does not own and is not required to own no-fault insurance as provided by § 3101(1) of the act, shall claim personal protection insurance benefits from the insurers of the owners or registrants of the motor vehicles involved in the accident. MCL 550.3115(1)(a); MSA 24.13115(1)(a). Because Marisa DeMeglio was not covered under a Michigan no-fault insurance policy, and was not required to obtain such coverage, Auto Club, the insurer of the owner of the only

motor vehicle involved in this accident, is responsible for her medical bills.

Auto Club points out, however, that Marisa DeMeglio has already received $10,000 from her parents' insurance policy with State Farm. The defendant argues that it should be allowed to set off this money under § 3109(1) of the no-fault act. That section provides:

> Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury. [MCL 500.3109(1); MSA 24.13109(1).]

The plaintiff, in opposition, argues that the money she received from State Farm was not a "benefit" as that word is used in this section. In order to resolve this issue, it is necessary for us to examine how this Court has previously interpreted § 3109(1).

B

The plaintiff bases her interpretation of the word "benefit" in § 3109(1) primarily on two cases decided by this Court, *LeBlanc v State Farm Mut Automobile Ins Co,* 410 Mich 173; 301 NW2d 775 (1981), and *Profit v Citizens Ins Co,* 444 Mich 281; 506 NW2d 514 (1993).

In *LeBlanc,* the plaintiff received Medicare benefits to pay for the extensive hospitalization and outpatient treatment he required as a result of a serious pedestrian-automobile accident. In addition to Medicare coverage, the plaintiff also possessed a no-fault policy with State Farm. State Farm willingly paid benefits with respect to items not covered by Medicare, but it refused to compensate the

plaintiff for those expenses that Medicare paid. The plaintiff brought suit to force State Farm to pay the full cost of his medical expenses. *Id.* at 188-189.

State Farm argued that Medicare benefits were "[b]enefits provided . or required to be provided under the laws of any state or the federal government" and were required to be subtracted from benefits otherwise owed to the plaintiff under § 3109(1). This Court, however, found that the benefits were "other health and accident coverage" under a related section of the no-fault act, § 3109a, which provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

This Court held that because the plaintiff had not elected to coordinate his Medicare benefits with his no-fault benefits, payments made on behalf of the Medicare program could not be subtracted from the no-fault benefits due under his policy. *LeBlanc, supra* at 206-207.

Similarly, in *Profit,* the insured's guardian sued the defendant insurance company, claiming that, because the insured did not elect to coordinate his policy's work-loss benefits with his other accident coverage under § 3109a, the defendant was not entitled to subtract the insured's social security disability benefits from those same work-loss bene-

fits under § 3109(1). The defendant argued that the benefits were appropriately subtracted under § 3109(1).

This Court held that social security disability benefits are benefits provided under federal law within the meaning of § 3109(1), and not, "other health and accident coverage," within the meaning of § 3109a. On the basis of our reasoning in *LeBlanc, supra,* the term "coverage" was deemed to include only those benefits that are "similar" to those provided by policies of insurance issued by private insurers. This type of policy provides accident coverage that is generally available to and purchased by employers for their employees or by the employees themselves. Social security disability benefits, which are provided as part of a mandatory, comprehensive social welfare entitlement program, providing benefits to all wage earners and paid for by all taxpayers, were held to be dissimilar to this type of insurance policy. They were, however, held to be "benefits provided or required to be provided" under the laws of the federal government. Therefore § 3109(1) applied, and it was appropriate for the defendant to subtract this money from the benefits otherwise owed under its policy with the plaintiff. *Profit, supra* at 287-288.

C

The plaintiff argues that in *LeBlanc* and *Profit* this Court defined the word "benefit" in § 3109(1) to mean benefits provided as a part of a mandatory, comprehensive social welfare entitlement program generally providing benefits to all persons who have been wage earners, and dependents of such persons, largely paid for by taxes from all wage earners. See *Profit, supra* at 287. We do not

agree. Instead, we believe a more accurate reading of *LeBlanc* and *Profit* reveals that those cases define the parameters of the phrase "other health and accident coverage" in § 3109a, rather than those of the word "benefit" in § 3109(1).

After describing the characteristics of Medicare benefits, the Court in *LeBlanc* analyzed whether this type of benefit should be set off under § 3109(1) or were required to be coordinated with other health and accident coverage by § 3109a. The two sections were characterized as covering two different types of benefits that overlapped in part. *LeBlanc, supra* at 201. In one sense, § 3109a was more broadly interpreted than § 3109(1), because the latter section is limited in its scope to benefits from a public source:

> It is indisputable that § 3109(1) contemplates benefits derived from a collateral governmental source; it is not equally indisputable that § 3109a applies only to "other health and accident coverage" obtained from a collateral private source. On its face, § 3109a is not so limited. [*Id.* at 202.]

We then proceeded, however, to define the scope of the word "coverage" in § 3109a to be more narrow than that of "benefits" in § 3109(1):

> In a general sense, benefits are those things which promote an individual's welfare, advantage or profit. In contrast to § 3109(1) is the later-enacted § 3109a, which more specifically speaks to other health and accident *coverage*. "Coverage," a word of precise meaning in the insurance industry, refers to protection afforded by an insurance policy, or the sum of the risks assumed by a policy of insurance.

*        *        *

We are also of the view that the Legislature's

enactment of § 3109a, which is narrowly limited to "coverage" and which is not expressly confined to private forms of such "coverage," evinces an intent to provide unique treatment to health and accident insurance, *as opposed to other perhaps equally duplicative "benefits."* [*Id.* at 203-204. Emphasis added; citations omitted.]

The word "coverage" is therefore a subset of the word "benefits," although § 3109a covers some benefits that § 3109(1) does not. This is because "coverage" refers to private as well as public benefits, whereas the benefits under § 3109(1) must be "provided or required to be provided under the laws of any state or the federal government."

The Court in *LeBlanc* then compared Medicare to other forms of health and accident coverage that are irrefutably within the scope of § 3109a, and concluded that there is no principled way to distinguish Medicare from these other forms of coverage. Consequently, Medicare benefits were held to fall under the impetus of § 3109a.[1]

This Court in *LeBlanc* did not, therefore, define the scope of the term "benefit" narrowly, as the plaintiffs argue. Rather, we left "benefit" as a relatively open term, but held that where a benefit is also "coverage" under § 3109a, that section must be applied.[2] This analysis has been clarified and reiterated in subsequent cases, including *Crowley*

---

[1] The United States Congress has since eliminated the operative effect of *LeBlanc* by enacting the Omnibus Budget Reconciliation Act of 1980, 42 USC 1395b, which mandated that Medicare is secondary to automobile insurance where coverage under such insurance is available. See *Profit, supra* at 285.

[2] We recognize that this important aspect of *LeBlanc* may have been unintentionally obfuscated because of footnote 53 of that opinion, which stated that, "Our characterization of Medicare receipts as 'benefits' does not contradict our determination that such receipts do not constitute governmental 'benefits,' as that term is employed in § 3109(1)." *Id.* at 206, n 53. This footnote, however, simply points out that the use of the word "benefits" in the main text was not meant to contradict the holding of the case, that Medicare receipts constituted

*v DAIIE,* 428 Mich 270; 407 NW2d 372 (1987), *Tatum v Government Employees Ins Co,* 431 Mich 663; 431 NW2d 391 (1988), and *Profit, supra.*

In *Crowley,* this Court held that § 3109(1) allowed the defendant insurance company to subtract medical benefits provided by the government pursuant to 10 USC 1071 *et seq.* to a serviceman in the United States Navy from benefits owed under his insurance policy.[3] To evaluate whether these benefits fit within the definition of "benefits" in § 3109(1), we used the test set forth in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984). Under the *Jarosz* test, state or federal benefits "provided or required to be provided" must be deducted from no-fault benefits under § 3109(1) if they: 1) serve the same purpose as the no-fault benefits, and 2) are provided or are required to be provided as a result of the same accident. *Crowley, supra* at 275-276, citing *Jarosz, supra* at 577.

Only *after* the Court in *Crowley* determined that the medical payments at issue were benefits under § 3109(1) did it turn to the question whether the payments were *also* "other health and accident coverage" under § 3109a. The Court found that it did not need to make this determination because § 3109a was inapplicable to the facts in question.

> We have concluded that there is no need to decide in the instant case whether military medical benefits are "other health and accident coverage" within the meaning of § 3109a because § 3109a applies only to benefits payable to the

---

"coverage" under § 3109a, and therefore should be evaluated under that section and not under § 3109(1). Subsequent discussion by this Court has clarified that footnote 53 should not be read as a substantive limitation on the definition of the word "benefits" as it appears in § 3109(1). See below.

[3] The relevant provision states: "a member of a uniformed service who is on active duty is entitled to medical and dental care in any facility of any uniformed service." 10 USC 1074(a).

person named in a no-fault policy, his spouse, and any relative of either domiciled in the same household. [*Crowley, supra* at 278.][4]

The majority in *Crowley* did not evaluate whether the payments at issue were received as part of a large universal entitlement program. This analysis is relevant only to a determination whether a benefit is similar to private health or accident insurance and might therefore constitute coverage under § 3109a. Because we found § 3109a to be inapplicable in *Crowley,* this "similarity analysis" was irrelevant to the outcome of the case.

By contrast, in *Tatum,* the plaintiff was within the class of people eligible for the coordination of benefits under § 3109a. This Court was thereby faced with the questions it was not faced with in *Crowley:* whether medical care supplied by the military under 10 USC 1071 *et seq.* qualifies as coverage under § 3109a, and, if so, whether § 3109(1) or § 3109a should be applied.

We concluded that the medical care provided in *Tatum* was both a "benefit" under § 3109(1) and "coverage" under § 3109a. As a consequence, we held that § 3109a must be applied:

> In short, pursuant to § 3109(1), plaintiff's military medical benefits normally must be subtracted from his no-fault insurance benefits. Further, our resolution of *Nyquist* [*v Aetna Ins Co,* 404 Mich 817; 280 NW2d 792 (1979)] and our decision in *LeBlanc* require the conclusion that plaintiff's

---

4 The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

military medical benefits constitute "other health and accident coverage" pursuant to § 3109a, requiring defendant to offer plaintiff a coordinated no-fault policy. The defendant has conceded that this did not occur. Therefore, as in *LeBlanc,* the setoff mandated by § 3109(1) may not be employed. [*Tatum, supra* at 670-671.][5]

Finally, in *Profit,* the plaintiff again claimed that the benefits at issue, in this case social security disability benefits, fell under the ambit of § 3109a, whereas the defendant maintained that § 3109(1) should be applied and the benefits set off pursuant to that section. The Court used the "similarity test" from *LeBlanc* and concluded that social security disability benefits were not similar to those provided by policies of insurance issued by private insurers. Hence, these benefits were not "coverage" under § 3109a. They were, however, benefits provided or required to be provided under the laws of the federal government. Therefore, social security disability payments were required to be subtracted from work-loss benefits otherwise payable under a no-fault insurance policy pursuant to § 3109(1). *Profit, supra* at 287-288.

In the cases discussed above, this Court has developed certain rules governing the application of § 3109(1) and § 3109a. First, whether a benefit is a "benefit" under § 3109(1) or "coverage" under § 3109a requires the application of two separate tests, the *Jarosz* test to determine the former, and the *LeBlanc* "similarity" test to determine the latter. *Jarosz, supra* at 577, *LeBlanc, supra* at 205. Second, a benefit may be a "benefit" under § 3109(1), "coverage" under § 3109a, neither, or

---

[5] It is worth noting that had the plaintiff in *Tatum* been offered and taken the opportunity to coordinate his health and accident coverage under § 3109a, it would have been appropriate to set off his government benefits under § 3109(1). *Id.* at 670-671.

both. The applicability of the sections is not an "either-or" proposition. *Tatum, supra* at 670. Third, if the benefit falls under the ambit of both sections, a court must initially apply § 3109a. The subtraction of § 3109(1) benefits from benefits otherwise payable under the no-fault insurance policy is not permitted in this situation, unless coverage was coordinated under § 3109a. *Tatum, supra* at 670-671; *LeBlanc, supra* at 206. Finally, when only one section is applicable, that section is applied without reference to the other. *Crowley, supra* at 278-280; *Profit, supra* at 288.

We now turn to the task of applying these rules to the facts of the present case.

### III

### A

The first step in our analysis is to use the tests enumerated above to determine whether § 3109(1) and § 3109a apply to the present situation. We find that while § 3109(1) is applicable, § 3109a is not.

The *Jarosz* test requires that state or federal benefits "provided or required to be provided" be subtracted from no-fault benefits otherwise payable to the insured under § 3109(1) if they: 1) serve the same purpose as the no-fault benefits, and 2) are provided or are required to be provided as a result of the same accident. *Jarosz, supra* at 577.

It is undisputed that the benefits received by Marisa DeMeglio from State Farm were required to be provided by the Pennsylvania state government. The Pennsylvania no-fault act provides:

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title . . . shall include coverage providing a medical

benefit in the amount of $10,000 . . . . [75 Pa Cons Stat Ann 1711.]

The medical benefit is required to cover first parties with respect to injuries arising out of the maintenance or use of a motor vehicle. 75 Pa Cons Stat Ann 1712.

The medical benefit under Pennsylvania's no-fault law was a benefit "provided or required to be provided under the laws of" Pennsylvania even though it was funded with no-fault insurance premium dollars and was paid to DeMeglio by a private insurer, State Farm, rather than tax dollars collected and disbursed by Pennsylvania. See *Mathis v Interstate Motor Freight System,* 408 Mich 164, 186; 289 NW2d 708 (1980).

Moreover, it is clear that these benefits serve the same purpose as the medical benefits provided by our no-fault insurance plans: to provide medical coverage in the event of an accident involving a motor vehicle. Both the benefits from State Farm and the benefits from the defendant were required to be provided as the result of the same accident. We conclude that the requirements of the *Jarosz* test are met under the facts of this case, and that § 3109(1) is applicable.

The same is not true of § 3109a, however. That section restricts its applicability to benefits payable to certain persons:

> The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

Ms. DeMeglio is not named in the relevant

policy, nor is she related to anyone named therein. Consequently, § 3109a has no application to the present case. See *Crowley, supra* at 279-280.

B

Our conclusion that the payments made by the out-of-state insurer were benefits for purposes of § 3109(1) is further cemented by looking to the purpose behind the provision. Such an examination is important because we seek to give effect to the intent of the Legislature as expressed in the statute. *Dussia v Monroe Co Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971). As Justice BOYLE stated in her concurrence in *Profit, supra* at 293, § 3109(1) was designed to reduce the cost of no-fault premiums by reducing the potential liability of insurance carriers.

> However, because the system was mandatory, it was imperative to contain costs so that vehicle owners or registrants could afford to purchase insurance policies. Therefore, the Legislature mandated subtraction of "[b]enefits provided or required to be provided under the laws of any state or the federal government . . . from the personal protection insurance benefits otherwise payable for the injury." MCL 500.3109(1); MSA 24.13109(1).

The Legislature, by creating this reduction, lowered insurance premiums by reducing the risk that insurance companies are liable for.

> The mandatory subtraction of benefits "provided or required to be provided" pursuant to state or federal law allows insurers to anticipate the risk being secured. If state or federal law provides that the benefit is to be provided by a source other than the no-fault insurer, the no-fault insurer is not

securing that risk and can reduce the basic no-
fault premium accordingly. [*Id.* at n 6.]

Thus, our conclusion that out-of-state insurance
benefits are included in the definition of benefits
under § 3109(1) undoubtedly furthers the purpose
behind this provision. Insurance companies can
now reduce the risk they are insuring and pass
this saving on to the consumer in lower premiums.

IV

Because the benefits at issue are "[b]enefits pro-
vided or required to be provided under the laws of
any state or the federal government" under
§ 3109(1), and because § 3109a is inapplicable to
these benefits, § 3109(1) should be applied. The
medical benefits provided by State Farm should be
subtracted from the benefits otherwise payable for
the injury under Michael Sweeney's no-fault policy
with the defendant. The defendant, of course, still
would be responsible for whatever payments are
required under its policy beyond the disputed
$10,000.

We would reverse the decision of the Court of
Appeals.

LEVIN and RILEY, JJ., concurred with BRICKLEY,
C.J.

BOYLE, J. (*concurring*). I have signed Chief Jus-
tice BRICKLEY's opinion because I agree with the
result and the analysis set forth in parts I, III, and
IV. I do not concur in the analysis in part II,
however, because I do not find MCL 500.3109a;
MSA 24.13109(1) to be relevant in the present
case. Section 3109a is expressly limited to coordi-
nation of no-fault benefits with other health and
accident coverage "payable to the person named in

the policy, the spouse of the insured and any relative of either domiciled in the same household." Marisa DeMeglio is neither the insured named in the Auto Club no-fault policy at issue, the spouse of the insured, nor a relative of either of those parties. I thus find the majority's discussion of the parameters of § 3109a coverage unnecessary.

The medical benefits paid on behalf of Marisa DeMeglio were provided pursuant to Pennsylvania state law and meet the test for benefits articulated in *Jarosz v DAIIE,* 418 Mich 565, 577; 345 NW2d 563 (1984). Setoff is therefore mandated under MCL 500.3109(1); MSA 24.13109(1). *Profit v Citizens Ins Co,* 444 Mich 281, 288-300; 506 NW2d 514 (1993) (Boyle, J., concurring in part and dissenting in part).

Cavanagh, J. I respectfully dissent from the majority's opinion because I believe that foreign no-fault benefits fall outside the intended scope of § 3109(1) benefits.

The Michigan no-fault act,[1] in my view, dictates this result. It is axiomatic that Michigan no-fault benefits are not § 3109(1) benefits.[2] No compelling statutory basis exists to conclude that foreign no-fault benefits must be treated as § 3109(1) benefits. The Legislature drafted a specific provision to deal with liability issues that may arise when an out-of-state resident, who is insured under a private

---

[1] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

[2] The Legislature drafted the priority provisions under §§ 3114 and 3115 to deal with situations involving multiple no-fault policies. If Michigan no-fault benefits were considered to be § 3109(1) benefits, these priority provisions would be rendered meaningless.

It is also instructive to note that this Court has held that Michigan no-fault benefits are not § 3109a benefits. *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508; 460 NW2d 194 (1990). In so holding in *DSS,* we emphasized that the priority provisions controlled for liability determinations.

automobile insurance policy, suffers injury because
of a motor vehicle accident that occurs in Michigan and that involves an insured Michigan motorist. That provision is § 3163, and it provides:

(1) An insurer authorized to transact automobile
liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental
bodily injury or property damage occurring in this
state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor
vehicle *by an out-of-state resident* who is insured
under its automobile liability insurance policies,
shall be subject to the personal and property protection insurance system set forth in this act.

(2) A nonadmitted insurer may voluntarily file
the certification described in subsection (1).

(3) When a certification filed under subsections
(1) or (2) applies to accidental bodily injury or
property damage, the insurer and its insureds with
respect to that injury or damage have the rights
and immunities under this act for personal and
property protection insureds, and claimants have
the rights and benefits of personal and property
protection insurance claimants, including the right
to receive benefits from the electing insurer as if it
were an insurer of personal and property protection insurance applicable to the accidental bodily
injury or property damage. [MCL 500.3163; MSA
24.13163. Emphasis added.]

Section 3163 demonstrates that the Legislature
contemplated the issue of coverage for an insured
out-of-state resident who is involved in an accident
in Michigan, and formulated § 3163 to address
that issue. Section 3163 also shows that the only
situation in which the Legislature deemed the
liability of an automobile insurer of an out-of-state
resident to be a relevant consideration under
Michigan no-fault law is when the conditions un-

der § 3163 have been satisfied.[3] Paraphrasing
§ 3163(1), those conditions are: .(1) certification of
the insurer in Michigan; (2) existence of an auto-
mobile liability policy between the insurer and the
out-of-state resident; and (3) a sufficient causal
relationship between the out-of-state resident's in-
juries and the ownership, operation, maintenance,
or use of a motor vehicle as a motor vehicle.[4]
When all three of these conditions are met, the
private automobile insurer of the out-of-state resi-
dent becomes subject to the requirements and
exclusions under Michigan no-fault law, and, in
most cases, its liability would be determined by
applying the normal priority rules under §§ 3114
and 3115.

The language that is emphasized in § 3163(1)
makes clear that the liability of an automobile
insurer of an out-of-state resident under Michigan
no-fault law is not coextensive with the liability of
a no-fault insurer of a Michigan resident.[5] A signif-
icant condition for the liability of an insurer of an
out-of-state resident is § 3163(1)'s requirement that

---

[3] Because the facts in this case do not require me to do so, I decline
to express any opinion about whether a judgment for or against an
insurer of an out-of-state resident may, in certain cases, be a relevant
consideration under the doctrine of res judicata. See, generally, *Jones
v State Farm Mut Automobile Ins Co,* 202 Mich App 393, 397; 509
NW2d 829 (1993).

[4] *Transport Ins Co v Home Ins Co,* 134 Mich App 645; 352 NW2d
701 (1984). Note that § 3163 would not apply if the out-of-state
resident operates a motor vehicle in Michigan for more than thirty
days in any calendar year because in that situation the out-of-state
resident would be required to maintain Michigan no-fault insurance.
MCL 500.3102(1); MSA 24.13102(1).

In addition, an out-of-state resident would not be entitled to collect
no-fault benefits under Michigan law if at the time of the accident the
out-of-state resident "was an occupant of a motor vehicle or motor-
cycle not registered in this state, and was not insured by an insurer
which has filed a certification in compliance with section 3163." MCL
500.3113(c); MSA 24.13113(c).

[5] *Mills v Auto-Owners Ins Co,* 413 Mich 567; 321 NW2d 651 (1982);
*Cheatum v Hartford Accident & Indemnity Co,* 121 Mich App 761;
329 NW2d 481 (1982).

the out-of-state resident own, operate, maintain, or use one of the motor vehicles that gives rise to the resident's accidental bodily injury. As this Court and several Court of Appeals panels have acknowledged, if the out-of-state resident is not owning, operating, maintaining, or using a motor vehicle that gives rise to the injury at the time of the accident, the certified insurer of the out-of-state resident is not liable, and primary responsibility rests with the insurers of the Michigan resident owners or operators of vehicles involved in the accident.[6]

Applying § 3163 to the case at bar, State Farm's

[6] *Parks v DAIIE,* 426 Mich 191, 209; 393 NW2d 833 (1986); *Mills v Auto-Owners Ins,* n 5 *supra* (an out-of-state resident was operating a motorcycle); *Bach v State Farm Mut Automobile Ins Co,* 137 Mich App 128; 357 NW2d 325 (1984) (an out-of-state resident was a pedestrian); *Endquist v Cadillac Ins Co,* 119 Mich App 801; 327 NW2d 368 (1982) (an out-of-state resident was a pedestrian); *Guibord v Farmers Ins Exchange,* 110 Mich App 218; 312 NW2d 219 (1981) (an out-of-state resident was operating a motorcycle).

In *Jones v State Farm Ins Co,* n 3 *supra* at 407, the Court of Appeals stated that § 3163 "was not intended to create an entirely new source of recovery, independent of the policy from which the claim arose." In light of the language in § 3163(3) in particular, that general construction of § 3163 is not accurate. Section 3163(3) indicates that a new source of recovery would be available to the extent recovery is permitted under Michigan no-fault law. However, the extent of recovery under Michigan no-fault law could not result in the insurer of the out-of-state resident having to pay duplicate benefits to its insured for the same losses. *Clute v General Accident Assurance Co of Canada,* 179 Mich App 527; 446 NW2d 839 (1989). Because liability under Michigan no-fault law, in certain situations, may be broader than that provided under an out-of-state resident's insurance policy, the Court of Appeals has recognized that an insurer's decision to file a certificate of compliance pursuant to § 3163 may make a policy more attractive to potential insureds who might be regular travelers in Michigan. *Safeco Ins Co v Economy Fire & Casualty Co,* 182 Mich App 552, 557; 452 NW2d 874 (1990); *Kriko v Allstate Ins Co of Canada,* 137 Mich App 528; 532; 357 NW2d 882 (1984). While the extent of coverage provided under Michigan no-fault law may be the same for insured residents and qualified insured out-of-state residents, it must be kept in mind that the specific language "by an out-of-state resident" in § 3163(1) precludes the liability of an insurer of an out-of-state resident from being perfectly coextensive with the liability of an insurer of a Michigan resident. See *Mills v Auto-Owners Ins, Bach, Endquist,* and *Guibord, supra.*

liability is not a controlling consideration under Michigan no-fault law, even though it had to pay no-fault benefits to its insured under Pennsylvania law.[7] Because State Farm regularly transacts automobile liability insurance in Michigan, it is likely that it is authorized to do so, and that it has filed a certificate of compliance as required under § 3163(1). Even if State Farm is considered a certified insurer, and even if it is undisputed that the accident arose out of the use of a motor vehicle as a motor vehicle, State Farm's liability does not come into play because the accident did not arise from an *out-of-state resident's* use of a motor vehicle as a motor vehicle. Marisa is the out-of-state resident, and she was using a bicycle, not a motor vehicle, when the accident occurred. Consequently, the conditions for liability for an insurer of an out-of-state resident have not been met under § 3163, and State Farm's connection to the accident is irrelevant for purposes of coverage determinations.[8]

ACIA is the only other potentially liable party. As the majority explicitly observes, ACIA is liable under §§ 3101(1) and 3115(1)(a). Unlike the majority, I would apply § 3163 to find that ACIA is primarily liable for the full share of benefits owing under Michigan no-fault law. Foreign no-fault benefits are outside the purview of § 3109(1), and § 3109a for that matter, because § 3163 exists as the provision for determining the extent of coverage available to an out-of-state resident whose insurer has filed a certificate of compliance. Application of § 3163 would permit priorities between

---

[7] State Farm had no choice when it paid the benefits that it did to Marisa DeMeglio because Pennsylvania no-fault automobile law provides that such no-fault coverage is "primary" to any other health and accident coverage of the insured, with the exception of worker's compensation. 75 Pa Cons Stat Ann 1719(a).

[8] *Mills v Auto-Owners Ins, Bach, Endquist,* and *Guibord,* n 6 *supra.*

competing no-fault policies issued in and outside Michigan to be governed by §§ 3114 and 3115 in accordance with the treatment given to competing no-fault policies issued in Michigan only. I consider it beneficial to maintain consistency under the no-fault act as far as possible. I also believe that application of § 3163 will lead to the fairest results in the majority of cases like the one before the Court now.

In arriving at my position in this case, I am not unmindful of the policy considerations that would favor a setoff—i.e., avoiding duplicative recovery and reducing premium costs. However, to find that § 3109(1) benefits include foreign no-fault benefits would, in my view, amount to judicial legislation. The Legislature drafted § 3163 to serve as the primary[9] mechanism to resolve liability issues that may arise from motor vehicle accidents that occur in Michigan and that implicate automobile insurers of out-of-state residents and Michigan residents. Any liability of a certified insurer of the out-of-state resident for its insured's injury becomes a pertinent consideration under Michigan no-fault law only when the conditions under § 3163 have been satisfied. When such conditions cannot be met, primary liability lies with the insurers of the Michigan residents.

While it is not for this Court to judge the wisdom of the Legislature's policy determinations, it is reassuring to recognize that when § 3163 is applied to situations that entail a motor vehicle accident in Michigan involving both an insured out-of-state resident and a Michigan resident, the possibility for double recovery by the out-of-state resident is a narrow one. For duplicate recovery to occur, the following combination of circumstances

9 See also §§ 3102(1) and 3113(c) discussed in n 4.

would have to exist: an out-of-state resident would have to be involved in an accident while traveling in Michigan; the out-of-state resident would have to possess automobile liability insurance; such insurance would have to provide that coverage under the policy is primary; and, finally, the conditions under § 3163 either could not be met, or they could be met but the insurer of the out-of-state. resident is not liable because an exception applies under the normal priority rules.[10]

For these reasons, I would affirm the decision of the Court of Appeals.

MALLETT, J., concurred with CAVANAGH, J.

WEAVER, J., took no part in the decision of this case.

[10] Significantly, the double recovery evidenced in this case is similar to the double recovery that would occur when a Michigan bicyclist or pedestrian, who is covered under an accident and health insurance policy—but not a no-fault automobile policy, suffers injuries from an accident that arose from the use of a motor vehicle owned and operated by a Michigan no-fault insured. In accordance with Michigan no-fault law, the bicyclist or pedestrian would be entitled to receive both benefits from her private insurer, and benefits from the no-fault insurer of the owner of the motor vehicle.